IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| REGINA BRYANT, | ) | CASE NO. 1:25-CV-0166 |
| | ) | |
| Plaintiff, | ) | JUDGE PAMELA A. BARKER |
| | ) | MAGISTRATE JUDGE GREENBERG |
| v. | ) | |
| | ) | |
| DOUGLAS A. COLLINS, Secretary of | ) | DEFENDANT'S MEMORANDUM IN |
| U.S. Department of Veterans Affairs, | ) | SUPPORT OF MOTION FOR SUMMARY |
| | ) | JUDGMENT |
| Defendant. | ) | |

# TABLE OF CONTENTS


| | Page |
|---|---|
| Table of Authorities | iv |
| Statement of the Issues | viii |
| Summary of the Arguments | viii |
| I. Introduction | 1 |
| II. Facts | 1 |
| A. Bryant's Previous Lawsuits | 5 |
| 1. *Bryant v. Wilkie*, No. 1:19-cv-2048-SO ("*Bryant I*") | 5 |
| 2. *Bryant v. McDonough*, Case Nos. 1:20-cv-726 & 1:20-cv-732 ("*Bryant II*") | 5 |
| 3. *Bryant v. McDonough*, Case No. 1:22-cv-207 ("*Bryant III"*) | 6 |
| 4. *Bryant v. McDonough*, No. 1:24CV1135 (*"Bryant IV"*) | 6 |
| III. Law and Argument | 6 |
| A. Summary Judgment Standard | 6 |
| B. This Court Lacks Subject-Matter Jurisdiction over Bryant's FMLA and Rehabilitation Act Retaliation Claims | 7 |
| 1. Title II Employees Do Not Have a Private Cause of Action Under the FMLA | 7 |
| 2. The United States Has Not Waived Sovereign Immunity For a Retaliation Claim Pursuant to the Rehabilitation Act | 9 |
| C. Failure To Exhaustion Administrative Remedies | 11 |
| 1. Title VII Exhaustion Requirements | 11 |
| 2. Some of Bryant's claims are subject to dismissal for failure to exhaust | 13 |

D. Rehabilitation Act Discrimination .................................................. 14

1. Bryant has not suffered an adverse employment action ........ 15

2. Bryant has no evidence that nondisabled persons were treated more favorably ........................................................ 16

3. Defendant had a legitimate non-discriminatory reason for denying Bryant's request for advanced leave ................. 17

E. Title VII Retaliation ........................................................................ 17

1. Bryant has not suffered a materially adverse employment action........................................................................ 18

2. Bryant cannot prove causation............................................. 18

F. Hostile Work Environment ............................................................ 19

IV. Conclusion ........................................................................................ 20

# TABLE OF AUTHORITIES


Cases | Page

*Abbott v. Crown Motor Co., Inc.*, 348 F.3d 537 (6th Cir. 2003) ....................17

*Allen v. Sec'y Carlos Del Toro*, No. 5:23-cv-68, 2024 WL 6953107 (N.D. Fl. Mar. 22, 2024) ....................15, 18

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ....................7

*Army & Air Force Exch. Serv. v. Sheehan*, 456 U.S. 728 (1982) ....................7

*Barnett v. Dep't of Veterans Affs.*, 153 F.3d 338 (6th Cir. 1998) ....................20

*Bledsoe v. Tenn. Valley Auth. Bd. of Dirs.*, 42 F.4th 568 (6th Cir. 2022) ....................15

*Bogumill v. Office of Pers. Mgmt.*, No. 98-3195, 1998 WL 486754 (Fed. Cir. Aug. 13, 1998) ....................8

*Bryant v. McDonough*, No. 1:22-cv-207, 2024 WL 1075431 (N.D. Ohio filed Mar. 12, 2024) ....................6

*Bryant v. McDonough*, No. 1:24CV1135, 2025 WL 2799412 (N.D. Ohio Sept. 30, 2025) ....................6

*Bryant v. Wilkie*, 834 F. App'x 170 (6th Cir. Nov. 4, 2020) ....................1

*Burg v. U.S. Dep't of Health & Human Serv*s., 387 F. App'x 237 (3d Cir. 2010) ....................8

*Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53 (2006) ....................18

*Carlson v. White*, 133 F. App'x 144, 144-45 (5th Cir. 2005) ....................8

*Cavicchi v. Sec' y of Treasury*, No. 04-10451, 2004 WL 4917357 (11th Cir. Oct. 15, 2007) ....................8

*Combs v. Int'l Ins. Co.*, 354 F.3d 568 (6th Cir. 2004) ....................7

*Conley v. VA Dep't Veterans Affairs,* No. 2:23-cv-02756, 2025 WL 2946412 (W.D. Tenn. Mar. 4, 2025) ....................9

*Dep't of the Army v. Blue Fox, Inc.*, 525 U.S. 255 (1999) ....................11

*Diggs v. Shinseki*, No. CV109-111, 2009 WL 3753999 (S.D. Ga. Nov. 9, 2009)..........................9

*Doucette v. Johnson*, No. 16-cv-11809, 2017 WL 840406
(E.D. Mich. Mar. 3, 2017) ..........................................................................................9

*E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753 (6th Cir. 2015)..........................................19

*FDIC v. Meyer*, 510 U.S. 471 (1994) .............................................................................7

*Giesken v. Dep't of Veterans Affairs*, No. 06-14901-BC, 2007 WL 1287958
(E.D. Mich. May 2, 2007)..............................................................................................9

*Gohl v. Livonia Pub. Schs.*, 134 F. Supp.3d 1066, 1074 (E.D. Mich. 2015),
*aff'd,* 836 F.3d 672 (6th Cir. 2016)..............................................................................14

*Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993).......................................................19, 20

*Hobson v. Mattis*, No. 3:16-cv-00774, 2018 WL 1871947
(M.D. Tenn. Feb. 13, 2018) ............................................................................................9

*Hulett v. Am. Finest Serv. Co.*, No. 1:03CV2497, 2005 WL 2233261
(N.D. Ohio Sept. 14, 2005)..............................................................................................8

*Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007) ........................................................14

*Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876 (6th Cir. 1996).......................................18

*Leach v. Mansfield*, No. H-07-4331, 2010 WL 707382 (S.D. Tex. Feb. 24, 2010) .......................9

*Lee v. City of Columbus, Ohio*, 636 F.3d 245 (6th Cir. 2011)...................................15, 18

*Lewis v. Humbold Acquisition Corp., Inc.*, 681 F.3d 312 (6th Cir. 2012)...............................14

*Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018)...............................................................6

*Maclin v. SBC Ameritech*, 520 F.3d 781, 788 (7th Cir. 2008) .........................................16

*Mann v. Haigh*, 120 F.3d 34 (4th Cir. 1997) .....................................................................8

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) ..........................................15,16, 17

*Mitchell v. Chapman*, 343 F.3d 811 (6th Cir. 2003)...................................................8, 12

*Montell v. Diversified Clinical Servs., Inc.*, 757 F.3d 497 (6th Cir. 2014)..................................18

*Morris v. Oldham Cnty. Fiscal Ct.*, 201 F.3d 784 (6th Cir. 2000) ...................................19

*Mulvey v. Perez*, No. 3:14-cv-1835, 2015 WL 5697318 (M.D. Tenn. Sept. 18, 2015) ....................9

*Muniz–Muniz v. U.S. Border Patrol*, 741 F.3d 668 (6th Cir. 2013) ....................7

*Peltier v. United States*, 388 F.3d 984 (6th Cir. 2004) ....................14

*Russell v. U.S. Dep't of the Army*, 191 F.3d 1016 (9th Cir. 1999) ....................7, 8

*Smith v. Mich. Dep't of Corrs.*, 159 F.4th 1067 (6th Cir. 2025)....................9, 10, 11

*Smith v. U.S. Postal Serv.*, 742 F.2d 257, 260 (6th Cir. 1984) ....................13

*Steiner v. Henderson*, 354 F.3d 432 (6th Cir. 2003)....................12

*Stewart v. Evans*, 275 F.3d 1126 (D.C. Cir. 2002) ....................16

*Thompson v. Sec'y of U.S. Dep't of Veterans Affairs,* No. 1:18CV1777, 2019 WL 7944405 (N.D. Ohio June 10, 2019), *adopted on this ground and rejected on others by*, 2019 WL 6521937 (N.D. Ohio Dec. 4, 2019)....................8

*Thompson v. Williamson Cnty.*, 219 F.3d 555 (6th Cir. 2000) ....................14

*United States v. Mitchell*, 445 U.S. 535 (1980) ....................11

*Univ. of Tex. S.W. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013) ....................18

*Weigold v. ABC Appliance Co.*, 105 F. App'x 702 (6th Cir. 2004)....................20

FEDERAL STATUTES

5 U.S.C. § 6381(1) ....................8

5 U.S.C. § 6382(a)(1)....................8

5 U.S.C. §§ 6381-6387 (Title II)....................8

29 U.S.C. §§ 701-796l ....................12,14

29 U.S.C. § 791....................11

29 U.S.C. § 794....................9, 11

29 U.S.C. § 794(a) ....................10, 14

29 U.S.C. § 794(d) ....................................................................................................10

29 U.S.C. § 2611(2) ....................................................................................................8

29 U.S.C. § 2612(a) ....................................................................................................8

29 U.S.C. § 2617(a)(2) (Title I) ....................................................................................8

42 U.S.C. § 12101 ....................................................................................................14

42 U.S.C. § 2000e-3(a) ....................................................................................10, 17

42 U.S.C. §§ 2000e-2000e-17....................................................................................12

42 U.S.C. § 2000e-16(c) ............................................................................................12

FEDERAL CODE OF REGULATIONS

29 C.F.R. § 1614.105(a)(1).....................................................................................12, 13

29 C.F.R. § 1614.105(d) ............................................................................................12

29 C.F.R. § 1614.106(a)..............................................................................................12

29 C.F.R. § 1614.106(b) ............................................................................................12

29 C.F.R. § 1614.407(a)..............................................................................................12

29 C.F.R. § 1614.407(b) ............................................................................................12

FEDERAL RULES OF CIVIL PROCEDURE

Fed. R. Civ. P. 56(a) ....................................................................................................6

## STATEMENT OF THE ISSUES

1. Whether some of Bryant's claims are properly excluded for failure to exhaust the required administrative remedies?

2. Whether the Court has subject matter jurisdiction over Bryant's Family Medical Leave Act claims?

3. Whether Bryant has a cause of action against the Secretary of the Department of Veterans Affairs for retaliation under the Rehabilitation Act?

4. Whether Bryant can set forth a prima facie case of discrimination in violation of the Rehabilitation Act?

5. Whether Bryant can set forth a prima facie case of retaliation in violation of Title VII?

6. Whether Bryant can set forth a prima facie case of hostile work environment?

## SUMMARY OF THE ARGUMENTS

Bryant's claims premised upon any acts or omissions that occurred in November or December 2022, are not properly before the court because Bryant did not timely initiate contact with EEO. The alleged discrimination and retaliation claims that were timely exhausted administratively are subject to summary judgment because Bryant cannot set forth direct evidence of discrimination, nor can she set forth a prima facie case. Bryant has not suffered an adverse employment action; employees not in the protected group were not treated more favorably; and she cannot satisfy the causation element. Furthermore, Defendant has legitimate non-discriminatory reasons for its employment decisions that are not pretextual.

Pursuant to *Smith v. Mich. Dep't of Corrs.*, 159 F.4th 1067, 1073 (6th Cir. 2025), Bryant's retaliation claim against the Secretary is not viable. The Rehabilitation Act does not specifically authorize a cause of action for retaliation and the United States has not specifically waived its

sovereign immunity for such claims. Therefore, Rehabilitation Act retaliation claims are not actionable.

Bryant as a federal employee covered by Title II of the FMLA, 5 U.S.C. §§ 6381-6387, does not have a private right of action. Because Title II does not expressly waive the government's sovereign immunity, private suits to enforce its provisions are barred.

## I. INTRODUCTION

Plaintiff Regina Bryant, an employee of the Department of Veterans Affairs ("VA") at the Louis Stokes Medical Center in Cleveland, Ohio, has filed five prior lawsuits alleging discrimination and retaliation.[1] In this sixth lawsuit, Bryant again asserts claims for disability discrimination, hostile work environment, harassment, and retaliation in violation of Title VII of the Civil Rights Act of 1964 and the Family Medical Leave Act (FMLA). (Am. Compl., Dkt. No. 15.) Bryant also alleges a cause of action for negligent and intentional infliction of emotional distress, discrimination, and FMLA interference.[2] (*Id.*, PageID # 157.)

## II. FACTS

Bryant has worked at the VA as a Medical Supply Technician within the Sterile Processing Service ("SPS") for over 11 years. (*Id.*, Attach. 1 Final Agency Decision ("FAD") PageID# 192.) Ms. Kendrick is the Chief of the Sterile Processing Service and Bryant's immediate supervisor. (*Id.*) In November of 2022, Bryant was diagnosed with uterine cancer. (*Id.*, PageID# 162.) However, Bryant never shared her diagnosis with her supervisor. (Bryant Tr. 117:16-24, excerpts attached.) Bryant was scheduled for surgery on December 28, 2022. (Am Compl., PageID# 163.) Bryant originally requested Advanced Sick Leave, Advanced Annual Leave to cover her absence between December 27, 2022, and February 16, 2023. (Bryant Tr. 18:17 – 19:2, Exhibit C, p. 2.)

---

[1] *See Bryant v. Wilkie*, No. 1:19-cv-02048, 2020 WL 364224, at * 3 (N.D. Ohio Jan. 22, 2020) (J. Oliver) (court dismissed Complaint, with prejudice, *sua sponte*); *Bryant v. Wilkie*, No. 1:20-cv-732 (N.D. Ohio filed Apr. 3, 2020) (J. Barker) and *Bryant v McDonough*, No. 1:20-cv-726, 2021 WL 5359182, at * 11 (N.D. Ohio Nov. 17, 2021) (J. Barker) (cases consolidated and court granted Defendant's motion for partial dismissal and motion for summary judgment), *aff'd*, 72 F.4th 149, 152 (6th Cir. 2023); *Bryant v. McDonough*, No. 1:22-cv-207, 2024 WL 1075431, at *7 n. 9 (N.D. Ohio filed Mar. 12, 2024) (J. Barker) (court granted Defendant's motion for summary judgment) *Id.* at *18. *Bryant v. McDonough*, No. 1:24CV1135, 2025 WL 2799412 (N.D. Ohio Sept. 30, 2025) (J. Ruiz) (court granted Defendant's Partial Mot. to Dismiss and *Sua Sponte* dismissed the remaining claims).

[2] The tort claims are no longer before the Court. (Mem. Op. and Order, Dkt. No. 25.)

Bryant also checked the box to indicate she was invoking her entitlement to Family Medical Leave. (*Id.*) Bryant had previously been approved for intermittent FMLA leave for other medical conditions but not for cancer or the related surgery. (*Id.*, 9:22 – 10:9.)

Two weeks later, on December 12, 2022, Bryant submitted a fax to the VA's Human Resources Department ("HR") that was a revised "Request for Leave or Approved Absence" requesting 240 hours of Advanced Sick Leave between December 28, 2022, and February 27, 2023, and Leave Without Pay. (*Id.*, 31:1-10, Exhibit D.) On the revised form, Bryant did not invoke leave pursuant to FMLA. (Am. Compl., Dkt. No. 15, Attach. 1 FAD, PageID # 193.) Bryant also requested eight hours of Sick Leave through the electronic time and attendance system, to cover her scheduled shifts on December 27-28, 2022. (*Id.*) Bryant had 4.30 hours of accrued Sick Leave at the time of her request. (*Id.*) Kendrick approved her Sick Leave request the same day. (*Id.*)

On December 15, 2022, an HR Specialist emailed Kendrick an "Advanced Leave Memo," which confirmed that Bryant requested 240 hours of Advanced Sick Leave and 96 hours of Leave Without Pay. (*Id.*, PageID # 193-94.) The memo documented that Bryant had exhausted her current leave balance. (*Id.*, PageID # 194.) Kendrick did not recommend approval of the leave request, and Ms. Holder, checked "Not Recommended" box on Kendrick's behalf. (*Id.*)

On December 21, 2022, an HR Specialist emailed Bryant indicating that her leave had been approved. (*Id.*) Hours later, the same HR Specialist sent a follow-up email stating that "[t]he previous approval…was sent in error" and attached the correct copy of the leave memo indicating the leave was "Denied." (*Id.*) Ultimately, the senior executive for SPS, Associate Director of Patient Care Services Garett E. Scheier, not Kendrick or timekeeper Ms. Holder, was the final decision maker on whether Ms. Bryant's request for advance leave was approved.[3]

[3] The Executive Director has the final authority for approval of advanced sick leave in excess of thirty

On December 22, 2022, Bryant submitted a second revised "Request for Leave or Approved Absence," requesting 328 hours of Leave Without Pay. (*Id.*) Holder notified the HR Specialist that Kendrick was recommending the request be denied because "[t]he service does not feel [Bryant] prudently uses her leave and staffing is also [a] reason for disapproval." (*Id.*) Bryant then rescheduled her surgical procedure to July 14, 2023. (*Id.*, PageID# 195.)

On May 26, 2023, Bryant submitted to HR "updated 'FMLA paperwork'" to include verifying medical documentation from her treating physician for cancer, and she requested eight weeks of FMLA leave. (*Id.*) She later contacted HR and indicated that she was requesting just six weeks of FMLA leave. (*Id.*) The HR Specialist sent Kendrick an "Advanced Leave Memo," indicating that Bryant had requested Advanced Leave – 120 hours Annual and Sick Leave – "to cover absences due to a surgical procedure scheduled on July 14, 2023." (*Id.*) The memo documented Bryant had 26 hours of available Annual Leave and 16.30 hours of accrued Sick Leave. (*Id.*) Kendrick emailed Bryant requesting "documentation from your physician on the surgical procedure and time that you will be out." (*Id.*) Kendrick also emailed the HR Specialist requesting "'supporting documents on the time that [Bryant] will be out due to the surgical procedure" and noting that she "cannot approve the Advanced Leave until I have specifics of the time [Bryant] will be out.'" (*Id.*) Bryant responded to Kendrick that she had "already submitted verifying documentation to HR, including 'the dates that [Bryant's] physician requested for [her] to be off.'" (*Id.*) Kendrick replied that "HR could not share [Bryant's] FMLA paperwork with her, and that [Bryant] needed to provide the requested information so that she could plan for staffing needs." (*Id.*) VA Policy authorizes supervisors to request additional information in support of sick

calendar days, advance annual leave, and advanced leave without pay in excess of thirty days. (Bryant Dep. Exhibit U - VA Policy MCP005-007.)

leave requests in excess of three workdays. (Bryant Depo. Exhibit U - MCP 005-007 at ¶ 3(d)(4).)

Kendrick recommended denying the request for Advanced Leave because Bryant "continues to use up her time and FMLA time for the last 3 years. It would be difficult for [Bryant] to make up the advanced leave." (Am. Compl., Dkt. 15, Attach. 1 FAD, PageID # 196.) Kendrick also confirmed that "[t]he tour of duty is down staff members and providing the advanced leave would impede operations for the shift." (*Id.*)

On July 7, 2023, HR issued Bryant's FMLA approval letter for the surgery, and Bryant then submitted her request for FMLA leave through the electronic time and attendance system. (*Id.*) On July 12, 2023, Kendrick emailed Bryant that Kendrick still needed paperwork from Bryant's physician stating she "will be out due to a surgical procedure and a proposed return date." (*Id.*) Bryant told Kendrick that HR had emailed Kendrick the FMLA approval letter, including Bryant's leave dates. (*Id.*) Kendrick replied that "she just returned from vacation and was catching up on emails." (*Id.*) The same day, Kendrick confirmed that she had received the email from HR and approved Bryant's time off (leave without pay) in the electronic system. (*Id.*)

On July 26, 2023, Bryant initiated the EEO process by contacting an EEO counselor and alleged that management subjected her to a hostile work environment due to physical disability and retaliated against her for prior EEO activity "[when], in June and July 2023, management requested verifying medical documentation in support of [Bryant's] requests for advance leave, and subsequently denied [her] leave requests." (*Id.*, Attach. 1 FAD PageID # 192.) On August 18, 2023, Bryant filed a formal EEO complaint, alleging for the first time that management also discriminated against her by denying her requests for Advanced Leave in December of 2022. (*Id.*, PageID # 190.) The VA Office of Resolution Management, Diversity, and Inclusion ("ORM") dismissed as discrete claims, Bryant's December 2022 and June 2023 leave denials due to "untimely EEO Counselor contact." (*Id.*)

The VA's Office of Employment Discrimination Complaint Adjudication held that Kendrick denied Bryant's Advanced Leave requests "due to [Bryant's] documented leave patterns, as opposed to her membership in a protected class" and ultimately found that Kendrick's 2022 and 2023 denials were based on "legitimate, nondiscriminatory reason[s]." (*Id.*, PageID# 204.)

A. <u>Bryant's Prior Lawsuits</u>

1. *Bryant v. Wilkie*, No. 1:19-cv-2048-SO *("Bryant I")*

In *Bryant I*, the court found:

> On September 5, 2019, Bryant, proceeding pro se, filed a complaint against the Secretary in which she alleged that she "was subjected to a Hostile Work Environment, Harassment, based on Reprisal and Negligence." *See Bryant I*, Dkt. No. 1, PageID # 2. Bryant alleged that she was harassed by Deal, [Dionna] Arthur, and other VA employees and subjected to a hostile work environment, and that the harassment intensified after she filed an EEO complaint detailing the alleged harassment by Deal and others. *Id.* On January 22, 2020, the court concluded that Bryant failed to plausibly allege her harassment and hostile work environment claims and dismissed these claims in their entirety. *See Bryant I*, 2020 WL 364224 (N.D. Ohio Jan. 22, 2020).

(*Bryant I*, Mem. Op. & Order, Dkt. No. 42, PageID # 1310-11.)

2. *Bryant v. McDonough*, Case Nos. 1:20-cv-726 & 1:20-cv-732 ("*Bryant II*")

Bryant filed a second and third lawsuit against the Secretary, alleging retaliation for filing an EEO claim and hostile work environment, harassment "caused by non-immediate supervisor [Kara Deal] or by co-worker [Dionna Arthur]," and sex and disability discrimination. (*See Bryant v. Wilkie*, Case No. 1:20-cv-00726, Dkt. No. 1, Compl.; *Bryant v. Wilkie*, Case No. 1:20-cv-00732, Dkt. No. 1, Compl.) This Court consolidated the two lawsuits. (8/28/20 non-doc. Order.)

The court granted the Secretary's Partial Motion to Dismiss, leaving the non-selection based on sex and disability discrimination as the only remaining claims. (*Bryant II*, Def.'s Partial Mot. to Dismiss, Dkt. 34, PageID# 1249-50; Mem. Op. & Order, Dkt. No. 42, PageID# 1308-28.) The remaining claims were disposed of via summary judgment. (*Bryant II*, Def.'s Mot. for Summ.

J., Dkt. No. 45, PageID# 1474-75; Mem. Op. & Order, Dkt. No. 52, PageID # 1974-99; J. Entry, Dkt. No. 53, Page ID # 2000.) Bryant appealed, and the Sixth Circuit Court of Appeals affirmed the judgment. *Bryant v. McDonough*, 72 F.4th 149, 152 (6th Cir. 2023).

3. *Bryant v. McDonough*, Case No. 1:22-cv-207 ("*Bryant III*")

While *Bryant II* was pending before the Sixth Circuit, Bryant filed *Bryant v. McDonough*, No. 1:22-cv-207 alleging retaliation for filing an EEO complaint and "Title VII hostile work environment caused by harassment by a non-immediate supervisor by negligence." (*Bryant III*, Am. Compl., Dkt. No. 5, PageID # 28.) This Court granted Defendant summary judgment on Bryant's retaliation and hostile work environment claims. *Bryant III*, 2024 WL 1075431, at *17, 18 (N.D. Ohio filed Mar. 12, 2024) (J. Barker).

4. *Bryant v. McDonough*, No. 1:24CV1135 ("*Bryant IV*")

On July 5, 2024, Bryant filed her fifth complaint, *Bryant v. McDonough*, No. 1:24CV1135, alleging claims of discrimination, hostile work environment, harassment, retaliation, and defamation of character and false accusations. *Bryant IV*, 2025 WL 2799412 (N.D. Ohio Sept. 30, 2025) (J. Ruiz). The underlying basis of Bryant's claims was the alleged denial of a $2,500 bonus and temporary reassignment to another department during an investigation of a co-worker's accusation of bullying. *Id.*, 2025 WL 2799412, at *1. The court granted Defendant's Partial Mot. to Dismiss for failure to exhaust certain claims and *Sua Sponte* dismissed the discrimination and hostile work environment claim on the grounds that Bryant failed to state a claim upon which relief may be granted where she failed to plead an adverse employment action. *Id.*, at *4-6.

## IV. <u>**LAW AND ARGUMENT**</u>

### A. <u>Summary Judgment Standard.</u>

Summary judgment is proper when there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). *Maben v. Thelen*,

887 F.3d 252, 258 (6th Cir. 2018). When ruling on a motion for summary judgment, a court must construe the evidence and make all reasonable inferences from it in favor of the non-moving party. *Id.* at 263 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The court should grant summary judgment when the evidence raises no genuine issues of material fact "such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "If the defendant successfully demonstrates, after a reasonable period of discovery, that the plaintiff cannot produce sufficient evidence beyond the bare allegations of the complaint to support an essential element of his or her case[,]" the court should grant summary judgment. *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 576 (6th Cir. 2004).

B. This Court Lacks Subject-Matter Jurisdiction over Bryant's FMLA and Rehabilitation Act Retaliation Claims.

The United States, as sovereign, is immune to suit except as it consents to be sued. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). The waiver of sovereign immunity must be express and unequivocal. *Army & Air Force Exch. Serv. v. Sheehan*, 456 U.S. 728, 734 (1982). The United States' sovereign immunity "extends to agencies of the United States or federal officers acting in their official capacities." *Muniz–Muniz v. U.S. Border Patrol*, 741 F.3d 668, 671 (6th Cir. 2013) (citations and internal quotation marks omitted). Absent an express waiver of sovereign immunity, federal courts lack subject-matter jurisdiction over a plaintiff's claims. *Id.* In this case, there is no waiver of sovereign immunity for retaliation under the Rehabilitation Act or for the FMLA claims.

1. Title II Employees Do Not Have a Private Cause of Action Under the FMLA.

Bryant has been a federal employee for more than 11 years; therefore, she does not have a private right of action under the FMLA. "The FMLA grants private and federal employees an entitlement to periods of leave for certain enumerated circumstances." *Russell v. U.S. Dep't of the Army*, 191 F.3d 1016, 1018 (9th Cir. 1999). Title I of the FMLA governs leave for private

employees and certain federal employees not covered by Title II of the FMLA. 29 U.S.C. §§ 2611(2), 2612(a). The vast majority of federal civil service employees who have completed twelve months of service, including Bryant, are governed by the provisions of Title II of the FMLA. *See* 5 U.S.C. §§ 6381(1) and 6382(a)(1). Bryant, who was appointed pursuant to Title 5 of the U.S. Code, is subject to Title II of the FMLA. (Exhibit A - Jindra Decl. ¶ 2.) While Title I and Title II employees have the same substantive rights to leave, the two titles contain different enforcement provisions. Title I expressly provides for judicial review to enforce its provisions, but Title II does not contain any such provision. *See* 29 U.S.C. § 2617(a)(2) (Title I) and 5 U.S.C. §§ 6381-6387 (Title II). Because Title II does not expressly waive the government's sovereign immunity, private suits to enforce its provisions are barred. *Russell*, 191 F.3d at 1018-19.

Although the Sixth Circuit has not expressly ruled on the issue, the circuit courts that have considered it have unanimously held that federal employees covered by Title II of the FMLA do not have a private right of action under the FMLA. *See Burg v. U.S. Dep't of Health & Human Serv*s., 387 F. App'x 237, 240 (3d Cir. 2010); *Cavicchi v. Sec' y of Treasury*, No. 04-10451, 2004 WL 4917357, at *6 (11th Cir. Oct. 15, 2007); *Carlson v. White*, 133 F. App'x 144, 144-45 (5th Cir. 2005); *Russell*, 191 F.3d at 1018-19; *Bogumill v. Office of Pers. Mgmt.*, No. 98-3195, 1998 WL 486754, at *1 (Fed. Cir. Aug. 13, 1998); *Mann v. Haigh*, 120 F.3d 34, 37 (4th Cir. 1997). The Sixth Circuit has recognized that the FMLA provides a private right of action only to "eligible employees." *Mitchell v. Chapman*, 343 F.3d 811, 826 (6th Cir. 2003).

District courts around the country, including in the Northern District of Ohio, have agreed that Title II employees may not bring private suits pursuant to the FMLA. As a court within this district stated, "[b]ecause Title II does not create a private right of action or waive federal sovereign immunity, [plaintiff's] suit must be dismissed if she is covered by Title II." *Hulett v. Am. Finest Serv. Co.*, No. 1:03CV2497, 2005 WL 2233261, at *3 (N.D. Ohio Sept. 14, 2005) (Oliver, J.).

*Accord*, *Thompson v. Sec'y of U.S. Dep't of Veterans Affairs,* No. 1:18CV1777, 2019 WL 7944405 at *8 (N.D. Ohio June 10, 2019) ("Because Thompson is a federal employee covered by FMLA's Title II, which does not create a private right of action nor waive federal sovereign immunity, the court lacks subject-matter jurisdiction over his FMLA claim."), *adopted on this ground and rejected on others by*, 2019 WL 6521937 (N.D. Ohio Dec. 4, 2019); *Conley v. VA Dep't Veterans Affairs*, No. 2:23-cv-02756, 2025 WL 2946412, at *5-6 (W.D. Tenn. Mar. 4, 2025); *Hobson v. Mattis*, No. 3:16-cv-00774, 2018 WL 1871947, at *3 (M.D. Tenn. Feb. 13, 2018); *Mulvey v. Perez*, No. 3:14-cv-1835, 2015 WL 5697318, at *3-4 (M.D. Tenn. Sept. 18, 2015); *Doucette v. Johnson*, No. 16-cv-11809, 2017 WL 840406, at *3 (E.D. Mich. Mar. 3, 2017); *Giesken v. Dep't of Veterans Affairs*, No. 06-14901-BC, 2007 WL 1287958, at *1 (E.D. Mich. May 2, 2007); *Leach v. Mansfield*, No. H-07-4331, 2010 WL 707382, at *7 (S.D. Tex. Feb. 24, 2010); *Diggs v. Shinseki*, No. CV109-111, 2009 WL 3753999 (S.D. Ga. Nov. 9, 2009).

Because Bryant is a civil service employee subject to Title II of the FMLA, Bryant cannot bring an FMLA suit in federal court. *Thompson*, 2019 WL 794405, at *8 (Because FMLA Title II does not create a private right of action, nor waive federal sovereign immunity, the court lacks subject matter jurisdiction.) This Court lacks subject-matter jurisdiction over Bryant's FMLA claims for alleged "willful violation" of the FMLA, FMLA interference, and FMLA retaliation. (Am. Compl., Dkt. No. 15, Claims 8-10, ¶¶ 16, 39, 42-78, 90, PageID# 162, 167-73, 175.)

2. The United States Has Not Waived Sovereign Immunity for Retaliation Claims Pursuant to the Rehabilitation Act.

Recently, the Sixth Circuit decided *Smith v. Mich. Dep't of Corrs.*, 159 F.4th 1067, 1073 (6th Cir. 2025), holding Section 504 of the Rehabilitation Act [29 U.S.C. § 794] does not provide a private right of action for retaliation. In reaching its decision, the Sixth Circuit recognized that the Supreme Court has never held that any provision of the Rehabilitation Act creates a private

right of action for retaliation. *Id.*, at 1075. The Sixth Circuit analyzed whether Sections 504(a) and (d) of the Rehabilitation Act provides statutory authority for a retaliation claim. 29 U.S.C. § 794(a), (d). The court noted that the plain language of the statutory text does not so provide. *Smith*, 159 F.4th at 1078, 1079 ("§ 504 is *silent* as to retaliation." "[The Rehabilitation Act] contains no express anti-retaliation provision.") The court reasoned that Congress did not intend to authorize a retaliation cause of action; recognizing that in other anti-discrimination laws Congress specifically included standalone anti-retaliation provisions. *Id.* at 1078 (citing Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-3(a); Age Discrimination in Employment Act, 29 U.S.C. § 623(d); and the Americans with Disabilities Act, 42 U.S.C. § 12203). Next, the court considered the contextual meaning of the statutory term used in § 504(d) – "standards" – stating, " 'Standards' are not synonymous with 'cause of action' in legal parlance. Standards guide how claims are adjudicated, not whether a cause of action exists in the first place." *Id.* at 1079. The court read "§ 504(d) to incorporate from the ADA only adjudicatory standards. . . ." *Id.* at 1082. The court held:

> Reading a private right of action for retaliation into § 504—whether through textual silence or using § 504(d) as a backdoor to import ADA claims—fails to provide the clear notice the Constitution demands. *See Davis [ex rel. LaShonda D. v. Monroe Conty. Bd. Of Educ.]*, 526 U.S. [629] at 640 [1999] . . . (quoting *Pennhurst [State Sch. & Hosp. v. Halderman]*, 451 U.S. [1] at 17 [1981]); *Kentucky v. Yellen*, 54 F.4th [325] at 348 [6th Cir. 2022]. So, to accept Smith's interpretation of subsection (d) would be to stretch "standards" beyond its established legal meaning and to assume what Congress never said—that the Rehabilitation Act independently authorizes retaliation claims through indirect reference alone. If Congress intended to create a new retaliation cause of action in the Rehabilitation Act, it could have done so as it has done numerous times before.

*Id.*

The Sixth Circuit's analysis in *Smith* is equally applicable here. The statutory language

analyzed in *Smith,* § 504(d) is very similar to the text of § 501(f).[4] In *Smith,* the court acknowledged the Supreme Court precedent that "[W]hen Congress legislates pursuant to the spending power, any conditions it attaches to the receipt of federal funds – including exposure to private lawsuits – must be stated unambiguously."159 F.4th at 1078 (citing *Pennhurst*, 451 U.S. at 17; *Barnes v. Gorman*, 536 U.S. 181, 186 (2002)). Similarly, the Supreme Court has held, "A waiver of sovereign immunity 'cannot be implied but must be unequivocally expressed.' " *United States v. Mitchell,* 445 U.S. 535, 538 (1980) (quoting *United States v. King*, 395 U.S. 1, 4 (1969)). "'Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit.'" *Dep't of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 260 (1999) (quoting *FDIC,* 510 U.S. at 475). Section 501 of the Rehabilitation Act does not unequivocally waive the United States' sovereign immunity for retaliation claims pursuant to the Rehabilitation Act. *See* 29 U.S.C. § 791; *Smith*, 159 F.4th at 1082. Because the United States has not unequivocally waived its sovereign immunity for retaliation pursuant to the Rehabilitation Act, the VA is entitled to summary judgment on Bryant's Rehabilitation Act retaliation claim.

C. <u>Failure To Exhaustion Administrative Remedies.</u>

1. Title VII Exhaustion Requirements.

---

[4] Section 504 (d) Standards used in determining violation of section

The standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under Title I of the Americans with Disabilities Act of 1990 (42 U.S.C. § 12111, *et seq.*) and the provisions of sections 501 through 504, and 510, of the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12201 to 12204 and 12210), as such sections relate to employment. 29 U.S.C. § 794.

Section 501 (f) Standards used in determining violation of section
The standards used to determine whether this section has been violated in a complaint alleging nonaffirmative action employment discrimination under this section shall be the standards applied under Title I of the Americans with Disabilities Act of 1990 (42 U.S.C. § 12111, *et seq.*) and the provisions of sections 501 through 504, and 510, of the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12201-12204 and 12210), as such sections relate to employment. 29 U.S.C. § 791.

Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17, is the exclusive judicial remedy for claims of discrimination in federal employment. *Steiner v. Henderson*, 354 F.3d 432, 434 (6th Cir. 2003) (citing *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 835 (1976)). "'In permitting federal employees to sue under Title VII, Congress conditioned the government's waiver of sovereign immunity upon a plaintiff's satisfaction of 'rigorous administrative exhaustion requirements and time limitations.'" *Id.* at 435 (citing *McFarland v. Henderson*, 307 F.3d 402, 406 (6th Cir. 2002) (quoting *Brown*, 425 U.S. at 833)). To bring suit in federal court pursuant to Title VII, a federal employee must first exhaust her administrative remedies. *Mitchell*, 343 F.3d at 819–20 (the exhaustion of administrative remedies is not a jurisdictional prerequisite but is, instead, a condition precedent to bringing suit in federal court).

First, an employee must bring the claim of discrimination to the attention of an EEO counselor within 45 days of the alleged discriminatory act. *See* 29 C.F.R. § 1614.105(a)(1). If the matter cannot be resolved informally, the employee must file a formal complaint with the employing agency's EEO office within 15 days of receiving notice of the right to file. *See* 29 C.F.R. § 1614.105(d); 29 C.F.R. § 1614.106(a), (b). If, after timely filing a formal administrative complaint and proceeding through administrative adjudication proceedings, the employee receives an adverse final determination, the employee may either file suit in federal court or request a hearing before the EEOC. If the employee elects a federal suit, he must file a complaint within 90 days of receiving notice of the agency's final decision or 180 days after filing the administrative complaint, if an appeal has not been filed and the agency has not yet reached its decision. *See* 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.407(a), (b).

Similarly, the Rehabilitation Act of 1973, 29 U.S.C. §§ 701-796l, requires a plaintiff to exhaust the administrative remedies prior to bringing her claims in district court. Section 501 of

the Rehabilitation Act incorporates the "remedies, procedures, and rights" in Title VII, including the exhaustion requirement. *Smith v. U.S. Postal Serv.*, 742 F.2d 257, 260 (6th Cir. 1984).

2. Some of Bryant's claims are subject to dismissal for failure to exhaust.

Bryant's Title VII retaliation claims and Rehabilitation Act disability discrimination claims premised upon any alleged act that occurred prior to June 12, 2023, are not properly before this Court. Bryant, who is not new to the EEO process, did not timely initiate the EEO process for any alleged discrimination claims involving the denial of time off for the period of December 2022 to February 2023, the timeframe related to the first scheduled surgery.[5] (Bryant Tr. 65:10-16.) Bryant initiated the EEO process on July 26, 2023. (Bryant Tr. 63:11 – 20, Depo. Exhibit J; Exhibit A – Jindra Decl., ¶ 3; Dkt. No. 15, PageID# 189.) On that date, she contacted an EEO counselor and alleged that management subjected her to a hostile work environment due to physical disability and retaliated against her for prior EEO activity "[when], in June and July 2023, management requested verifying medical documentation in support of [Bryant's] requests for advanced leave, and subsequently denied [her] leave requests." (Am. Compl., Dkt. No. 15, Attach. 1 FAD, PageID# 192.) On August 18, 2023, Bryant filed a formal EEO complaint, alleging for the first time that management also discriminated against her by denying her requests for Advanced Leave in December of 2022. (*Id.*, PageID# 190.) ORM dismissed as discrete claims, Bryant's December 2022 and June 2023 leave denials due to "untimely EEO Counselor contact." (*Id.*) ORM properly determined that Bryant failed to timely exhaust her administrative remedies for any discrete acts that occurred outside of the forty-five days prior to July 26, 2023. *See* 29 C.F.R. § 1614.105(a)(1).

---

[5] Bryant attempted to amend her Complaint in *Bryant IV* to add claims for the denial of her November and December 2022 leave requests. (See *Bryant IV*, Mot. for Leave, Dkt. No. 33, filed Jan. 10, 2023; Proposed Am. Compl., Dkt. No. 36.) Bryant conceded that she had not exhausted her administrative remedies, stating that she "completely forgot about the EEO process." (*Bryant IV*, Pl.'s Reply, Dkt. No. 35, PageID# 609, 628.)

The only exhausted claims before the Court are Bryant's claims of disability discrimination and retaliation for prior EEO activity premised upon: (1) Management's (Kendrick) emails to Bryant requesting that she provide documentation from her physician on the surgical procedure and time that she would be out on leave and (2) Management's decision on June 15, 2023 denying the request for Advanced Leave; and the hostile work environment claim, which is primarily based on management permitting Deanna Arthur, another Sterile Processing Tech with whom Bryant does not get along, to work on the same shift as Bryant following an unsubstantiated complaint of bullying.

D. Rehabilitation Act Discrimination Claim.

The Rehabilitation Act of 1973, 29 U.S.C. §§ 701–796l, and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, use the same substantive standard. *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007). "[C]ourts often treat the two in the same manner and analyze ADA and RA claims together." *Gohl v. Livonia Pub. Schs.*, 134 F. Supp.3d 1066, 1074 (E.D. Mich. 2015), *aff'd*, 836 F.3d 672 (6th Cir. 2016); *Thompson v. Williamson Cnty.*, 219 F.3d 555, 557 n.3 (6th Cir. 2000). However, Rehabilitation Act claims do have a stricter causation standard than ADA claims. The Rehabilitation Act forbids agencies of the United States, from discriminating against an "otherwise qualified individual with a disability … solely by reason of her or his disability. . . . " 29 U.S.C. § 794(a); *Lewis v. Humbold Acquisition Corp., Inc.*, 681 F.3d 312, 315 (6th Cir. 2012). The Rehabilitation Act provides the exclusive remedy for federal employees alleging disability discrimination. *Peltier v. United States*, 388 F.3d 984, 989 (6th Cir. 2004).

To make a prima facie showing under the Rehabilitation Act, Bryant must show that (2) she is disabled; (2) she is otherwise qualified for the job, with or without an accommodation; (3) she has suffered an adverse employment action; (4) her employer knew or should have known of

the disability; and (5) a nondisabled person was treated more favorably. *Bledsoe v. Tenn. Valley Auth. Bd. of Dirs.*, 42 F.4th 568, 578 (6th Cir. 2022). If a plaintiff states a prima facie case, then the burden shifts to the employer to demonstrate a legitimate, nondiscriminatory reason for its actions. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-806 (1973).

1. Bryant has not suffered an adverse employment action.

The mere act of requesting Bryant provide her supervisor with additional information from her physician regarding the nature of Bryant's surgery and the amount of time away from work needed for recuperation does not violate the Rehabilitation Act. VAMC Policy MCP-005-007 permits a supervisor to require an employee to provide additional information when requesting sick leave of three or more days. (Bryant Depo. Exhibit U - MCP Policy 005-007, ¶ 4(d)(4).) *See Lee v. City of Columbus, Ohio*, 636 F.3d 245, 256-57 (6th Cir. 2011) (employer's policy allowing the supervisor to request employees supply information justifying the use of sick leave is not an improper medical inquiry under the Rehabilitation Act) (list of cases cited therein). The court in *Lee* held:

> [T]he City's Directive comports with the Rehabilitation Act and does not violate the proscriptions pertaining to disability-related inquiries set forth in§ 12112(d)(4)(A) of the ADA, incorporated by reference into the Rehabilitation Act. Because the City's implementation of the Directive does not constitute an adverse employment Action, plaintiffs have failed to establish a prima facie case of disability discrimination under the Rehabilitation Act.

*Id.*, at 258-59.

Likewise, the denial of Bryant's requests for paid advanced sick and/or advanced annual leave was not an adverse employment action. Bryant did not have an absolute right to advance sick and/or annual leave; the approval of such request is in the discretion of the senior management. (Bryant Tr. Depo. Exhibit U – MCP Policy 005-007.) *See Allen v. Sec'y Carlos Del Toro*, No. 5:23-cv-68, 2024 WL 6953107, at *8 (N.D. Fl. Mar. 22, 2024) (where the plaintiff is not entitled

to a benefit, the denial or delay of benefit does not qualify as an adverse employment action for purposes of Title VII) (quoting *Hottenroth v. Vill. of Slinger*, 388 F.3d 1015, 1033 (7th Cir. 2004) (affirming summary judgment on a retaliation claim where plaintiff "'failed to offer any evidence to prove ... or even to suggest that she was ever entitled'" to the benefit she was denied); *Maclin v. SBC Ameritech*, 520 F.3d 781, 788 (7th Cir. 2008) (denial of a discretionary bonus was not an adverse action); *Stewart v. Evans*, 275 F.3d 1126, 1135 (D.C. Cir. 2002) (delay in providing a temporary designation not an adverse action)). *Bryant IV*, 2025 WL 2799412, at *3 (denial of discretionary bonus to which an employee is not otherwise entitled is not an adverse employment action). Bryant cannot demonstrate that she has suffered an adverse employment action.

2. Bryant has no evidence that nondisabled persons were treated more favorably**.**

There is no evidence that nondisabled employees were treated more favorably under similar circumstances. Bryant is not aware of a similarly situated employee without a disability who was treated differently. (Bryant Tr. 70:19 – 71:24.) In fact, Bryant admits that she is unaware of whether any of her coworkers have a disability and/or the type of leave that may or may not have been approved for her coworkers. (Ex. B - Resp. to Interrog. No. 9; Bryant Tr. 72:18-23.) Therefore, Bryant cannot satisfy the fifth element of a prima facie case of disability discrimination under the Rehabilitation Act.

The VA is entitled to summary judgment on Bryant's disability discrimination claim. She has no evidence to support her claim that Kendrick's request for additional information in support of Bryant's advanced leave request was discriminatory (Bryant Tr. 118:11-18 – 119:6) or that she was denied advanced leave to discriminate against her based upon a disability. (Bryant Tr. 73:14 – 74:2; 140:23 – 141:14; 141:22 – 142:8.) Because Bryant has no direct evidence of disability discrimination, and she cannot set forth a prima facie case as required by *McDonnell Douglas*, Defendant is entitled to summary judgment on Bryant's Rehabilitation Act discrimination claim.

3. Defendant had a legitimate non-discriminatory reason for denying Bryant's request for advanced leave.

Even if Bryant could establish a prima facie case of discrimination, the VA has legitimate nondiscriminatory reasons for denying Bryant's request for advanced leave. The request for discretionary advanced leave was denied for two reasons: (1) it would be difficult for Bryant to make up the advanced leave based upon her pattern of using up her sick and annual leave, and (2) staffing levels were down which would impede the operations of the SPS. (Bryant Tr. 90:25 – 92:18, Dep. Exhibit O.) Bryant cannot refute the VA's reasons. She testified that she does not remember whether there was a staffing shortage in the department at the time her request for leave was denied (Bryant Tr. 92:19-2) and she concedes that it would have been difficult for her to make up any advanced leave. (*Id.*, at 94:3-5.) Bryant cannot show that the VA's legitimate non-discriminatory basis for its actions is pretextual. *McDonnell Douglas*, 411 U.S. at 803-04.

E. <u>Title VII Retaliation.</u>

Title VII, at 42 U.S.C. § 2000e-3(a), prohibits retaliation against an employee "because he has opposed any practice made an unlawful employment practice . . . or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." To state a prima facie case of retaliation, a plaintiff must prove that: (1) she engaged in protected activities; (2) her exercise of her civil rights was known by the defendants; (3) defendants thereafter took an employment action that was materially adverse to her; and (4) there was a causal connection between the protected activity and the adverse employment action. *Abbott v. Crown Motor Co., Inc.*, 348 F.3d 537, 542 (6th Cir. 2003) (citations omitted).

The standard for adverse action in retaliation claims differs from the showing necessary for adverse employment actions in the discrimination context. "[A] plaintiff must show that a

reasonable employee would have found the challenged action materially adverse," which the Supreme Court defined as an action that would dissuade a reasonable worker from making or supporting a charge of discrimination. *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006). A "mere inconvenience or an alteration of job responsibilities" or a "bruised ego" will not constitute an adverse employment action. *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 886 (6th Cir. 1996) (internal quotations omitted). As the Supreme Court stated, "[w]e speak of *material* adversity because we believe it is important to separate significant from trivial harms." *Burlington*, 548 U.S. at 68.

1. Bryant has not suffered a materially adverse employment action.

As stated above, Bryant has not experienced an adverse employment action. While leave without pay may have been an inconvenience for Bryant, the denial of advanced leave was not a materially adverse employment action. *Allen*, 2024 WL 6953107, at *8. Similarly, Kendrick's recommendation that the request for advanced leave be denied, which was not the final decision, is not an adverse employment action. Last, Bryant's supervisor's request that Bryant provide additional information from her doctor in support of her request for leave was in accordance with the VAMC's policy, and not an adverse employment action. *Lee,* 636 F.3d at 258.

2. Bryant cannot prove causation.

Not only must Bryant show that the Secretary took an adverse action against her because of the prior EEO activity, but Bryant must also demonstrate "that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex. S.W. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013); *Montell v. Diversified Clinical Servs., Inc.*, 757 F.3d 497, 503 (6th Cir. 2014). Here, Bryant must show that the defendant would not have taken the alleged materially adverse action if she had not engaged in protected activity. To satisfy this burden, Bryant must provide evidence from which a reasonable trier of fact could find that the

Secretary would not have imposed the materially adverse actions [request for additional information from her doctor or denied advanced leave] had Bryant not made an EEO charge or complaint. *E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753, 770 (6th Cir. 2015).

Bryant cannot meet her burden of proof on the issue of causation. In accordance with MC Policy 005-007, Acting Director Heimann was the deciding official on the request for advanced leave. Bryant has no information that Director Heimann was even aware of her prior EEO activity at the time he denied the request for advanced leave. (Bryant Tr. 140:23 – 142:9.) Likewise, Bryant has no basis for her subjective belief that she was denied advance leave because of her prior EEO activity. (*Id.*, 73:1-13; 130:6 -131:2.)

Likewise, there is no proof that but-for her prior EEO activity, Kendrick would not have requested Bryant furnish additional information from her doctor in support of the leave request. In fact, Bryant has no evidence to support her belief that Ms. Kendrick's request for a doctor's note was in retaliation for prior EEO activity. (Bryant Tr. 118:11 – 119:10.) Bryant has no knowledge of any similarly situated employee without EEO activity that was treated differently. (Bryant Tr. 72:11-17.) Bryant cannot set forth a prima facie case of retaliation for prior EEO activity. Therefore, the VA in entitled to summary judgment.

F. Hostile Work Environment.

A hostile work environment exists where the workplace is "permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65, 67 (1986)). For the harassment to be actionable under Title VII it must rise to the level of severe or pervasive, a few isolated incidents will not suffice. *Morris v. Oldham Cnty. Fiscal Ct.*, 201 F.3d 784, 790 (6th Cir. 2000). The harassment must be both subjectively and objectively offensive.

*Harris*, 510 U.S. at 21-22. "[W]hether an environment is "'hostile'" or "'abusive'" can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23.

There is no evidence that VA supervisors or Bryant's co-worker, Dionna Authur, engaged in any conduct that was "so extreme that it amounts to a 'change in the terms and conditions of employment.'" *Weigold v. ABC Appliance Co.*, 105 F. App'x 702, 710 (6th Cir. 2004) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). Bryant's hostile work environment claim is premised upon the fact that management allowed Ms. Aurthur to work third shift with Bryant after she accused Bryant of bullying.[6] (Bryant Tr. 147:5 – 150:6.) Bryant admits: 1) that she and Ms. Authur do not speak to one another (Bryant Tr. 149:16-21); Ms. Authur has never physically assaulted her (*id.*, Tr. 148:1-3); and Ms. Authur has not said anything derogatory or verbally abusive ((*id.*, Tr. 148:4-8). Working with a coworker with whom she dislikes, without more, does not create a hostile work environment. *Barnett v. Dep't of Veterans Affs.*, 153 F.3d 338,342-43 (6th Cir. 1998) (conflicts between employees based upon personal issues do not equate to discriminatory animus). Therefore, the VA is entitled to summary judgment on Bryant's hostile work environment claim.

## IV. CONCLUSION

For the foregoing reasons, Defendant respectfully moves this Court for judgment in its favor on all of Bryant's remaining claims.

---

[6] Bryant's hostile work environment claim based upon personal conflict with her co-workers, including Dionna Authur, have been found non-actionable in *Bryant I*, *Bryant II*, *Bryant III*, and *Bryant IV*.

Respectfully submitted,

DAVID M. TOEPFER
United States Attorney
Northern District of Ohio

By: s/ Renée A. Bacchus
Renée A. Bacchus (OH 0063676)
Assistant U.S. Attorney
U.S. Attorney's Office
801 W. Superior Avenue, S. 400
Cleveland, OH 44113
(216) 622-3707 – phone
(216) 522-4982 – fax
Renee.bacchus@usdoj.gov

**Page Limit Certification**

The forgoing Memorandum in Support of Defendant's Motion for Summary Judgment is twenty (20) pages in length and complies with the page limit for matters assigned to the Standard Track in compliance with Local Rule 7.1.

/s/ Renée A. Bacchus
Renée A. Bacchus
Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

The forgoing *Motion for Summary Judgment and Memorandum in Support*, was filed electronically on January 16, 2026, and a copy will be served upon all parties of record via the Court's electronic docketing system. A true and accurate copy was sent via email and regular U.S. Mail, postage pre-paid, on January 16, 2026, to:

Regina Bryant
11410 Scottwood Ave
Cleveland, OH 44108
Ginab2324@yahoo.com

/s/ Renée A. Bacchus
Renée A. Bacchus