IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

FILED
MAR 06 2026
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

REGINA BRYANT, ) Case No. 1:25-CV-00166

Plaintiff, ) JUDGE PAMELA A. BARKER

) v. )

DOUGLAS A. COLLINS, SECRETARY, ) PLAINTIFF'S RESPONSE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

U.S. DEPARTMENT OF VETERANS AFFAIRS, )

Defendant )

# PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

COMES NOW (Regina Bryant) Plaintiff files this response to defendant's motion to Summary Judgment.

## I. INTRODUCTION

Plaintiff Regina Bryant, a long-term employee of the Louis Stokes VA Medical Center and a person with multiple disabilities, submits this memorandum in opposition to Defendants' Motion for Summary Judgment.

Bryant has endured years of harassment, bullying, Retaliation for prior EEO complaints and a hostile work environment, compounded by denial of medically necessary leave for life-saving cancer surgery, resulting in PTSD, severe depression, anxiety, and panic attacks. These facts, supported by documentary evidence, create genuine issues of material fact for trial, precluding summary judgment.

## II. FACTUAL BACKGROUND

1. The Plaintiff has worked as a Sterile Processing Technician at the VA Medical Center for over 12 years.
2. Plaintiff is a Schedule A employee with multiple documented disabilities
3. The Plaintiff is a person with Autism, ADHD, dyslexia, dyscalculia, dysgraphia, and sensory disorders, placing her in a protected class under the ADA and Rehabilitation Act.
4. The Plaintiff has also been diagnosed with post-traumatic stress disorder (PTSD), Depression Anxiety
5. On November 8, 2022, the plaintiff was diagnosed with uterine cancer and stage III prolapse, requiring radical surgery.
6. The plaintiff submitted FMLA leave requests, supported by medical documentation. HR initially approved the leave on December 21, 2022, at 12:32 p.m. but rescinded approval at 3:51 p.m. the same day due to intervention by her supervisor, Karen Kendrick, and administrator, Teresa Holder.
7. The denial forced the plaintiff to delay her surgery seven months, causing extreme emotional distress, worsening her PTSD and anxiety, and requiring psychiatric treatment and therapy.
8. Non-disabled employees were permitted to take medical leave in similar staffing conditions
9. Bryant was forced to work on the same shifts as a coworker who had harassed and bullied her for years
10. Management forced her to continue working with the known harasser and ignored repeated complaints regarding ongoing harassment.
11. The plaintiff has filed and exhausted EEO complaints for disability discrimination, retaliation, and hostile work environment.

# STATEMENT OF THE ISSUES

1. **Whether some of Bryant's claims are properly excluded for failure to exhaust the required administrative remedies?**

## I. Plaintiff Fully Satisfied the Administrative Exhaustion Requirements Applicable to Federal Employees

Federal employees filing claims under the Rehabilitation Act must follow the administrative procedures set forth in 29 C.F.R. Part 1614. Those procedures require a federal employee to: (1) timely contact an EEO counselor; (2) file a formal complaint; (3) permit agency investigation; and (4) either receive a Final Agency Decision or wait 180 days before filing suit.

The Plaintiff complied with each of these requirements:

1. Plaintiff timely contacted an EEO counselor within the required 45-day period.
2. Plaintiff filed a formal EEO complaint.
3. The Agency accepted All the plaintiff complaint for investigation.
4. The Agency conducted its investigation and issued a Final Agency Decision addressing All Plaintiff's claims.
5. The Plaintiff filed a Federal Tort Claim.
6. Plaintiff timely filed this civil action following the FAD.

Because Plaintiff completed the full administrative process and received a Final Agency Decision, she has satisfied the exhaustion requirements as a matter of law.

## CONCLUSION

The Plaintiff properly exhausted her administrative remedies. Her claims are either:

1. Explicitly raised in her EEO complaints.
2. Reasonably related to those complaints.
3. A predictable outgrowth of ongoing retaliation and harassment; or
4. Part of a continuing hostile work environment.

Genuine disputes of material fact exist as to exhaustion. Accordingly, **no claim should be excluded at summary judgment**, and the VA's exhaustion defense should be rejected.

# 2. Whether the Court has subject matter jurisdiction over Bryant's Family Medical Leave Act claims?

## Argument

The Plaintiff acknowledges that as a Title II federal employee, she does not possess a standalone private right of action under the FMLA. However, Defendant's interference with Plaintiff's medical

leave remains actionable under the Rehabilitation Act as evidence of discrimination, retaliation, and failure to accommodate."

1. **Disability Discrimination:** Rescission of approved leave for cancer surgery disproportionately impacted Plaintiff, a person with disabilities, while other coworkers with less serious health issues and non-disabled employees were permitted to take leave.
2. **Retaliation:** The leave rescission occurred following Plaintiff's engagement in protected EEO activity, demonstrating a temporal nexus and supporting causation for her retaliation claim.
3. **Hostile Work Environment:** The deliberate denial of medically necessary leave contributed to severe emotional distress, exacerbating Plaintiff's PTSD and anxiety, and illustrates the pattern of ongoing harassment and hostile treatment.

The FMLA interference is evidence of Rehabilitation Act discrimination and retaliation

# 3. Whether Bryant has a cause of action against the Secretary of the Department of Veterans Affairs for retaliation under the Rehabilitation Act?

## ARGUMENT

## PLAINTIFF HAS A COGNIZABLE RETALIATION CLAIM UNDER THE REHABILITATION ACT

The Plaintiff (Regina Bryant), a federal employee, has alleged a valid retaliation claim against the Secretary of the Department of Veterans Affairs pursuant to 29 U.S.C. § 791 (Section 501 of the Rehabilitation Act). The plaintiff, who is a federal employee, may pursue claims for retaliation when they engage in protected activity, such as filing EEO complaints alleging discrimination or asserting rights under the Rehabilitation Act.

## I. The Rehabilitation Act Provides Federal Employees a Cause of Action Incorporating Title VII Protections

Section 501 of the Rehabilitation Act, 29 U.S.C. § 791, applies to federal employees and incorporates the remedies, procedures, and rights of Title VII. Courts in the Sixth Circuit recognize that claims for retaliation under the Rehabilitation Act are actionable because Section 501 incorporates the anti-retaliation framework of Title VII and the Americans with Disabilities Act.

## II. Sovereign Immunity Does Not Bar This Claim

Defendant argues that the United States has not waived sovereign immunity for retaliation claims under the Rehabilitation Act. This argument is incorrect. Section 501 incorporates Title VII remedies, and Title VII contains an explicit waiver of sovereign immunity for federal employment discrimination claims, including retaliation.

## III. The Plaintiff (Regina Bryant) Has Sufficient Facts to Establish a Prima Facie Retaliation Claim

a plaintiff may establish a prima facie retaliation claim under the Rehabilitation Act by demonstrating that:

1. The Plaintiff engaged in protected activity.
2. The employer was aware of the activity.
3. The employer took a materially adverse action; and
4. There is a causal connection between the protected activity and the adverse action.

The Plaintiff record shows:

- **Protected Activity:** The Plaintiff filed multiple EEO complaints alleging disability discrimination.
- **Employer Knowledge:** Supervisors, including the Chief of Sterile Processing and the administrator, were aware of her EEO filings.
- **Materially Adverse Action:** Defendant rescinded previously approved medical leave for cancer surgery, delaying life-saving treatment for seven months.
- **Causation:** The leave rescission occurred after The Plaintiff engaged in protected EEO activity and involved actions inconsistent with standard procedures applied to non-disabled employees.

These facts establish a prima facie case of retaliation under Section 501.

## IV. The Secretary of the VA is the Proper Defendant

Because Plaintiff was employed by the **United States Department of Veterans Affairs**, federal law requires that the head of that agency be named as the defendant.

Accordingly, the proper defendant in this case is: Denis McDonough

Plaintiff has therefore correctly identified the appropriate party under the Rehabilitation Act and the procedural framework incorporated from **Title VII of the Civil Rights Act of 1964**.

## V. Conclusion

The Plaintiff has a fully cognizable retaliation claim under the Rehabilitation Act. Defendant's arguments to the contrary are without merit:

Section 501 incorporates Title VII protections, including anti-retaliation remedies;

- Sovereign immunity is waived.
- The Plaintiff has alleged facts sufficient to establish a prima facie claim; and
- She sued the proper agency official.

The Defendant's motion for summary judgment on the retaliation claim should be **denied**.

## 4. Whether Bryant can set forth a prima facie case of discrimination in violation of the Rehabilitation Act?

## ARGUMENT

## PLAINTIFF ESTABLISHES A PRIMA FACIE CASE OF DISABILITY DISCRIMINATION UNDER THE REHABILITATION ACT

The **Rehabilitation Act of 1973, 29 U.S.C. § 791 et seq.,** prohibits discrimination against "otherwise qualified individuals with a disability" in federal employment. Specifically:

"No otherwise qualified individual with a disability…shall, solely by reason of her or his disability, be subjected to discrimination under any program or activity conducted by any Executive agency…"

A plaintiff must demonstrate:

1. **Membership in a protected class** (disabled individual);
2. **Qualification for the position** (able to perform essential job functions with or without reasonable accommodation);
3. **Suffering an adverse employment action**; and
4. **Causal connection** between the disability and the adverse action, often demonstrated through comparator evidence or pretext.

**Federal employees** may pursue Rehabilitation Act claims after **exhausting EEO administrative remedies**, and the Act incorporates **Title VII procedural protections**, including retaliation and pretext analysis.

## I. Plaintiff is a Qualified Individual with Disabilities

- Plaintiff has multiple documented disabilities, including
- **Autism Spectrum Disorder, ADHD, Dyslexia, Dyscalculia, Dysgraphia, sensory disorders,**
- **PTSD, depression, and anxiety**, and was hired as a **Schedule A candidate**, a program specifically designed to employ individuals with disabilities.

- The plaintiff is also certified through the International Association of healthcare central

## II. Plaintiff Suffered Materially Adverse Employment Actions

Defendant rescinded Plaintiff's approved FMLA leave for radical cancer surgery, delaying treatment for seven months. This action **directly impacted Plaintiff's health and safety**, exacerbated her PTSD and anxiety, and forced her to choose between her medical needs and her job. Additionally, Plaintiff endured years of **hostile work environment and harassment**, further evidencing adverse employment actions.

## III. Comparator Evidence Supports Less Favorable Treatment

Evidence shows that **similarly situated non-disabled employees with less serious medical conditions then the plaintiffs. were permitted to take medical leave** during comparable staffing shortages. In contrast, Plaintiff's leave was rescinded despite initial HR approval.

## IV. Temporal Proximity and Supervisor Misconduct Establish Causation and Pretext

The leave rescission occurred on **the same day HR initially approved it**, following intervention by **Plaintiff's Chief, Karan Kendrick**, and **administrator Teresa Holder**, both of whom were aware of Plaintiff's prior EEO activity and disability status. The timing and direct involvement of Chief and administrator with a documented history of hostility toward Plaintiff demonstrate both: Temporal proximity and causation.

## V. REASONABLE ACCOMMODATION CLAIM

In addition to disparate treatment, Bryant can assert that the VA **failed to provide reasonable accommodation**:

- Denial of medically necessary leave effectively **refused to accommodate her serious health conditions**, including uterine cancer and stage III prolapse.

The Agency's failure exacerbated her disabilities (PTSD, anxiety, depression), further supporting a discrimination claim under Section 501

## Conclusion

Plaintiff has satisfied all elements of a prima facie case of disability discrimination under the Rehabilitation Act:

1. The Plaintiff is a qualified individual with disabilities.

2. The Plaintiff suffered materially adverse employment actions, including rescission of approved medical leave and ongoing harassment.
3. Enduring a hostile work environment.
4. The Plaintiff was treated less favorably than non-disabled comparators; and
5. Management forced the plaintiff to continue working with a coworker who had previously harassed her.
6. Defendant's proffered reasons are pretextual, as evidenced by temporal proximity, chief and administrator misconduct, and differential treatment.
7. These actions were motivated by her disability and exacerbated by management's deliberate indifference

A reasonable jury could therefore conclude that the VA **discriminated against the plaintiff based on her disability**, making summary judgment inappropriate

## 5. Whether Bryant can set forth a prima facie case of retaliation in violation of Title VII?

### I. Title VII Anti-Retaliation Provision

- Title VII prohibits an employer from **taking an adverse employment action against an employee because they opposed discriminatory practices or participated in an EEO process**. 42 U.S.C. § 2000e-3(a).

## ARGUMENT

To establish a prima facie retaliation, claim under the Rehabilitation Act, a plaintiff must demonstrate three key elements:

- **Protected Activity:** The employee engaged in statutorily protected activity (e.g., filing an EEO complaint or opposing discrimination);
- **Employer Knowledge:** The employer knew of the protected activity.
- **Adverse Employment Action:** The employee suffered a materially adverse action that might deter a reasonable worker from engaging in protected activity; and
- **Causal Connection:** There is a causal link between the protected activity and the adverse action.

## II. The plaintiff established a prima facie case:

### 1. Protected Activity

- Bryant filed multiple **formal EEO complaints** alleging disability discrimination and hostile work environment.
- Filing such complaints constitutes **protected activity** under Title VII and the Rehabilitation Act.

## 2. Employer Knowledge

- Supervisors, including **Karan Kendrick (Chief of Sterile Processing)** and **Teresa Holder (Administrator)**, were aware of the plaintiff's EEO complaints and prior protected activity.
- The record shows direct communications and interventions by these supervisors, confirming **employer knowledge**.

## 3. Adverse Employment Action

- Defendant rescinded **previously approved FMLA leave** for radical cancer surgery.
- This action **delayed life-saving medical treatment** for seven months, exacerbated PTSD and anxiety, and forced the plaintiff to choose between health and employment.
- Other materially adverse actions include ongoing **harassment, hostile work environment, and denial of reasonable accommodations for medical leave for cancer surgery.**
- Despite the plaintiff having previously **filed EEO complaints identifying a coworker who had harassed and bullied her for years**, management **required her to continue working on the same shift as this individual**.
- The coworker **followed Bryant across shifts** to continue the harassment.
- Bryant experienced **emotional and mental distress** as a result of the continued contact.

## 4. Causal Connection

- The rescission of approved leave occurred **after the plaintiff**'s EEO activity.
- Temporal proximity, combined with **comparator evidence** (non-disabled employees were allowed medical leave) and direct **supervisor intervention**, supports an inference of retaliatory intent.

## . Plaintiff Establishes a Prima Facie Case of Retaliation Under Title VII

1. **Protected Activity:** Filing formal EEO complaints.
2. **Employer Knowledge:** Supervisors were aware of EEO activity.
3. **Adverse Employment Action:** Rescission of approved medical leave, continued harassment, and hostile work environment.
4. **Causal Connection:** Temporal proximity, comparator evidence, and supervisor misconduct demonstrate retaliation.

# 1. Whether Bryant can set forth a prima facie case of hostile work environment?

I. To establish a prima facie hostile work environment claim under **Title VII of the Civil Rights Act of 1964** or the **Rehabilitation Act**, a plaintiff must show that:

## A. Hostile Work Environment Standard

1. **Membership in a protected class** – here, disability and/or prior engagement in protected EEO activity.
2. **Unwelcome conduct** – discriminatory or harassing acts that were offensive.
3. **Based on the protected characteristic** – i.e., because of disability or EEO activity.
4. **Severe or pervasive** – the conduct must be sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment; and
5. **Employer liability** – the employer knew or should have known of the harassment and failed to take prompt corrective action.

## II. The plaintiff belongs to a Protected Class

## 1. Protected Class

- The Plaintiff is a **Schedule A federal employee with multiple disabilities**, including Autism Spectrum Disorder, ADHD, Dyslexia, Dyscalculia, Dysgraphia, sensory disorders, PTSD, depression, and anxiety.
- She is also in a protected class by virtue of **engaging in prior EEO activity**, including filing formal complaints.

## 2. Unwelcome Conduct

The Plaintiff alleges persistent harassment and bullying over more than 12 years, including

- Plaintiff endured repeated **bullying, harassment, and derogatory treatment** from supervisors and coworkers over 12 years.
- Despite the Plaintiff Bryant having previously **filed EEO complaints identifying a coworker who had harassed and bullied her for years**, management **required her to continue working on the same shift with this individual.**

This coworker:

- Followed Bryant to different shifts, ensuring ongoing contact.
- Repeatedly engaged in bullying, harassment, and intimidation.
- Caused Bryant emotional and mental distress,

- Interference with medical leave and treatment, including rescission of FMLA leave.
- Denial or rescission of previously approved leave
- A hostile work environment that exacerbated her PTSD, depression, and anxiety

Such conduct constitutes unwelcome harassment if a reasonable person in her position would find it hostile or abusive

## 3. Harassment Based on Protected Status

The Plaintiff has established that she was subjected to harassment because of her protected status as a person with disabilities, and that management directly facilitated or condoned this harassment, creating a hostile work environment.

- Management Directed the Plaintiff to Work with a Known Harasser
- Despite the Plaintiff having previously filed EEO complaints identifying a coworker who had harassed and bullied her for years, management required her to continue working on the same shift with this individual.
- The supervisor and administrators knew of the Plaintiff 's disabilities and EEO activity.
- The interference with FMLA leave and medical treatment disproportionately affected, the Plaintiff who is on the autism spectrum and has other cognitive disabilities.
- The coworker's harassment **persisted after Bryant's prior EEO complaints**, and management allowed or required continued exposure, which demonstrates that the harassment was tied to her protected status and prior protected activity.

### 4. Severe or Pervasive

- The harassment and interference were **ongoing over many years**, not isolated incidents.
- Multiple years of continuous bullying and harassment.
- Escalation across shifts, including following Bryant to new schedules.
- Emotional and psychiatric harm requires therapy and treatment.

- Direct interference with Bryant's ability to perform her job under safe, non-hostile conditions.
- Denial of life-saving medical leave, compounded by emotional and psychological impact, constitutes **extreme and materially adverse conditions**.

### 5. Causation / Motivated by Protected Characteristic

- The harassment and leave denial were **directly linked to Plaintiff's disabilities and prior EEO activity**, evidenced by:
- Temporal proximity between EEO filings and adverse actions.
- Comparator evidence showing non-disabled employees received medical leave with less serious medical issues, then the plaintiff. when plaintiff was denied time off work for her cancer surgery.

### 6. Employer Liability

- The VA Medical Center **knew or should have known** of the hostile conduct.
- A supervisor or manager **knew or should have known** about harassment; and
- The employer **failed to take prompt, effective remedial action.**
- Bryant had previously reported this coworker in formal EEO complaints.
- Supervisors knowingly required her to continue working with this individual.
- No meaningful remedial action was taken to prevent further harassment.

- HR initially approved leave but rescinded it after supervisor intervention, demonstrating **failure to prevent or correct harassment**.

## III. CONCLUSION

The Plaintiff has established a **prima facie case of hostile work environment** under both the Rehabilitation Act and Title VII:

1. The Plaintiff belongs to protected classes (disability and prior EEO activity).
2. The Plaintiff endured unwelcome, discriminatory conduct.
3. The harassment was directly related to her protected status and prior EEO activity;
4. It was severe, pervasive, and interfered with her work performance and mental health;
5. Management's actions (forcing her to work with a known harasser) contributed to and maintained the hostile work environment
6. The conduct was causally connected to her protected status
7. The VA Medical Center failed to take prompt corrective action.

**Result:** Summary judgment on the hostile work environment claim should be **denied**.

## A. This Court Lacks Subject-Matter Jurisdiction over Bryant's FMLA and Rehabilitation Act Retaliation Claims.

A. The Plaintiff acknowledges that as a Title II federal employee, she does not possess a standalone private right of action under the FMLA. However, Defendant's interference with Plaintiff's medical leave remains actionable under the Rehabilitation Act as evidence of discrimination, retaliation, and failure to accommodate.

## ARGUMENT

## THE FMLA LEAVE DENIAL DEMONSTRATES CAUSATION AND PRETEXT IN PLAINTIFF'S RETALIATION AND DISABILITY DISCRIMINATION CLAIMS

Even if the Court dismisses Plaintiff's standalone FMLA claim, the record evidence regarding the denial of medically necessary leave is highly probative of **retaliation** and **disability discrimination** under the Rehabilitation Act. The circumstances surrounding the leave recession reveal both **causation** and **pretext**, and directly refute Defendant's purported legitimate non-discriminatory reason.

---

### I. Temporal Proximity Strongly Supports Retaliation

Plaintiff's protected activity—filing formal EEO complaints alleging disability discrimination and hostile work environment—occurred prior to the rescission of her approved leave. The facts are undisputed:

- On **December 21, 2022**, HR initially approved Plaintiff's FMLA leave for radical cancer surgery.
- Hours later, the approval was rescinded following intervention by **her supervisor, Karan Kendrick**, and **administrator Teresa Holder**, both employees of the VA Medical Center.

The unusually rapid reversal, occurring within hours and orchestrated by supervisors directly aware of her EEO activity, strongly supports an inference of retaliation.

### II. Comparator Evidence Demonstrates Pretext

Plaintiff was treated differently than non-disabled employees in similar situations:

- Other employees were allowed to take medical leave for personal surgery during staffing shortages.
- Plaintiff's medically necessary leave was rescinded despite HR initially approving it.
- No legitimate operational explanation justifies this disparate treatment.

## III. Supervisor Misconduct Corroborates Pretext and Retaliatory Intent

The leave rescission was not an impersonal HR error. It was the direct result of intervention by supervisors with a history of hostility toward Plaintiff:

1. **Karan Kendrick**, Chief of Sterile Processing, and **Teresa Holder**, administrator, both acted to prevent Plaintiff from taking leave necessary to treat her life-threatening illness.
2. The intervention occurred **despite VA's procedural approval of leave**, indicating that the purported operational need was pretextual.
3. Plaintiff's documented history of disability and prior EEO activity suggests a **pattern of harassment and targeted discrimination**, supporting an inference of retaliatory intent.

## IV. Materially Adverse Action for Retaliation and Disability Discrimination

The rescission of approved medical leave constituted a **materially adverse employment action** because it:

- Delayed critical cancer surgery by **seven months**.
- Exacerbated Plaintiff's PTSD, depression, and anxiety.
- Forced her to choose between her health and her job.
- Interfered with her legally protected leave rights.

Such adverse treatment satisfies both the **"materially adverse" standard for retaliation** and the **adverse employment action requirement for disability discrimination**.

## V. Conclusion

The denial of FMLA leave is evidence of both:

- **Retaliation** in violation of the Rehabilitation Act, and
- **Disability discrimination** under Section 501 of the Rehabilitation Act.

Summary judgment is therefore **improper**, and this evidence should be considered central to Plaintiff's claims.

# Cat's Paw Liability Applies in the Plaintiff's Case

The **Cat's Paw doctrine** holds an employer liable when a **biased supervisor, motivated by discrimination or retaliation, influences a neutral decision-maker to take an adverse employment action**.

**Cat's Paw Liability Connects Supervisors' Retaliatory Animus to Agency Decisions**

Even if HR formally rescinded the plaintiff's leave, the agency may be held liable under the **Cat's Paw theory**, which establishes that an employer is responsible for a decision influenced by a supervisor with retaliatory animus. See **Staub v. Proctor Hospital, 562 U.S. 411 (2011)**.

In this case:

- The plaintiff's direct supervisors knew of her protected activity and had previously failed to stop harassment.
- Those same supervisors allegedly **intervened with HR** to rescind medically necessary leave.
- The supervisors' retaliatory animus, therefore, became the **proximate cause of the VA's adverse employment decision**.

Under Cat's Paw principles, the agency cannot escape liability simply because HR executed the formal leave denial. A jury may reasonably conclude that **the supervisors' retaliation drove the agency's actions**.

# 1. The Supervisors Initiated the Chain of Retaliatory Events

The plaintiffs had previously engaged in protected activity by filing EEO complaints regarding harassment and discrimination.

After this protected activity:

- Her supervisors were aware of the complaints;
- They allegedly failed to address the harassment identified in those complaints; and
- They continued to expose Bryant to the same coworker who had bullied and harassed her.

This conduct demonstrates that Bryant's supervisors **possessed both knowledge of her protected activity and the opportunity to retaliate**.

## 2. The Leave Denial Was Influenced by Supervisory Intervention

The plaintiff's request for advanced sick leave for cancer treatment was initially **approved by HR after review of her medical documentation**.

However, the approval was later **rescinded after intervention by** the plaintiff's **supervisor and department administrator**. This sequence strongly supports the inference that the supervisors' actions **influenced the ultimate leave decision**.

Under **Staub v. Proctor Hospital**, if a biased supervisor takes an action intended to cause an adverse employment decision and that action is a proximate cause of the decision, the employer is liable—even if the final decision-maker did not personally harbor discriminatory intent.

A reasonable jury could therefore conclude that the supervisors' retaliatory animus **directly caused the rescission of** the plaintiff's **medically necessary leave**.

### 3. The Same Supervisors Allowed the Hostile Work Environment to Persist

The same supervisors who allegedly influenced the leave decision also:

- knew that a coworker had harassed Bryant for years;
- knew that the coworker had been identified in prior EEO complaints; and
- nonetheless **forced Bryant to continue working alongside that coworker**.

By failing to intervene or separate Bryant from the harasser, the supervisors **perpetuated a retaliatory work environment** that compounded the harm caused by the leave denial.

This evidence strengthens the inference that the supervisors' retaliatory motives **affected multiple employment decisions**, not just one isolated action.

### 4. The Combined Actions Create a Single Retaliatory Narrative

When these events are viewed collectively, they form a **continuous chain of retaliatory causation**:

1. The plaintiff engaged in protected EEO activity.
2. Supervisors developed retaliatory animus toward the plaintiff
3. Those supervisors influenced HR to rescind her advanced sick leave.
4. The same supervisors allowed harassment to continue and forced the plaintiff to work with a known harasser.

Under the Cat's Paw doctrine, the VA cannot escape liability simply by claiming that **different officials made different decisions**, because those decisions may all have been **proximately caused by the retaliatory actions of Bryant's supervisors**.

---

## Conclusion

The evidence supports a reasonable inference that the plaintiff's supervisors—motivated by retaliatory animus following her protected activity—**set in motion a chain of events that resulted in the denial of medically necessary leave and the continuation of a hostile work environment**.

Under **Staub v. Proctor Hospital**, this chain of causation is sufficient to establish employer liability, even if the final decision-makers appear neutral.

At minimum, these facts create **a genuine dispute of material fact regarding the true motivation behind the VA's actions**, making summary judgment inappropriate.

## A. The United States Has Not Waived Sovereign Immunity for Retaliation Claims Pursuant to the Rehabilitation Act.

1.The **Rehabilitation Act of 1973**, 29 U.S.C. § 791(f), provides that:

"The remedies, procedures, and rights set forth in title VII of the Civil Rights Act of 1964 … shall be available to any person alleging discrimination on the basis of disability."

- Title VII explicitly **waives sovereign immunity** for claims against the United States regarding employment discrimination and retaliation once the plaintiff exhausts administrative remedies. See **42 U.S.C. § 2000e-16(c)**.
- By incorporating Title VII procedures, the Rehabilitation Act **extends the waiver of sovereign immunity to retaliation claims** brought by federal employees.

### 2. Exhaustion of Administrative Remedies is the Trigger

Federal employees must exhaust EEO procedures before filing suits under the Rehabilitation Act. This serves two functions:

1. **Notification and opportunity for agency correction**.
2. **Triggering Congress's waiver of sovereign immunity**

### 3. Application to Bryant:

- Plaintiff filed formal EEO complaints covering **retaliation, disability discrimination, hostile work environment, and FMLA leave denial**.
- She received a **Final Agency Decision** approving her right to pursue claims in federal court.

By completing the administrative process, the plaintiff has **satisfied the condition for the waiver of sovereign immunity**.

### 4. Conclusion

The United States has **waived sovereign immunity** for Rehabilitation Act retaliation claims once administrative remedies are exhausted. Plaintiff Regina Bryant satisfies this requirement and has demonstrated **adverse employment action, temporal proximity to protected activity, pretext, and comparator evidence**.

## C. Rehabilitation Act Discrimination Claim

The **Rehabilitation Act of 1973, 29 U.S.C. § 791 et seq.,** prohibits discrimination against "otherwise qualified individuals with a disability" in federal employment. Specifically:

"No otherwise qualified individual with a disability…shall, solely by reason of her or his disability, be subjected to discrimination under any program or activity conducted by any Executive agency…"

A plaintiff must demonstrate:

5. **Membership in a protected class** (disabled individual).
6. **Qualification for the position** (able to perform essential job functions with or without reasonable accommodation).
7. **Suffering an adverse employment action**; and
8. **Causal connection** between the disability and the adverse action, often demonstrated through comparator evidence or pretext.

**Federal employees** may pursue Rehabilitation Act claims after **exhausting EEO administrative remedies**, and the Act incorporates **Title VII procedural protections**, including retaliation and pretext analysis.

## 2. Plaintiff's Protected Disability Status

- Plaintiff Regina Bryant has multiple documented disabilities:
  - **Autism Spectrum Disorder**
  - **ADHD, Dyslexia, Dyscalculia, Dysgraphia**
  - **Sensory disorders**
  - **PTSD, depression, anxiety**
- The Plaintiff is a **Schedule A federal employee**, formally recognized as an individual with disabilities.

## 3. Plaintiff is a Qualified Individual

- Bryant has **successfully performed her duties** as a Sterile Processing Technician for over **13 years**, demonstrating she is a **qualified individual** under the Rehabilitation Act.
- Plaintiff also made **reasonable accommodation requests**, such as scheduling leave for medical procedures. Which were denied. The plaintiff was denied time off. Some work to have her cancer Surgery.

## 4. Adverse Employment Action

Plaintiff experienced multiple **adverse actions linked to her disability status**, including:

- **FMLA leave rescission for life-saving cancer surgery**:
- HR initially approved the leave on December 21, 2022, at 12:32 p.m.; approval was **rescinded at 3:51 p.m.** following intervention by Chief Kendrick and Timekeeper Holder.
- The rescission forced **a seven-month delay of radical surgery**, exacerbating PTSD, anxiety, and requiring ongoing psychiatric care.
- **Ongoing harassment and bullying in the workplace**,

- Bryant had previously reported this coworker in formal EEO complaints
- A supervisor or manager **knew or should have known** about harassment; and
- The employer **failed to take prompt, effective remedial action.**

## 5. Comparator Evidence Demonstrates Disparate Treatment

- **Non-disabled employees** at the VA Medical Center were approved for medical leave under similar operational and staffing conditions.
- Bryant's leave was **rescinded only after prior EEO activity**.

**Implication:** Comparator evidence and timing establish **disparate treatment and causal connection**, supporting a prima facie case.

## 6. Evidence of Pretext and Causation

Defendants may assert a **legitimate reason** for the leave rescission, such as staffing needs. However:

- **Non-disabled employees** at the VA Medical Center were approved for medical leave under similar operational and staffing conditions.
- **Supervisors acted inconsistently with official policies**, intervening personally to rescind approved leave for Plaintiff only.
- The combination of **timing (post-EEO activity), supervisor misconduct, and favorable treatment of non-disabled employees** creates a triable issue of fact regarding pretext.

## 7. Causation

- Adverse actions (leave rescission, denial of accommodation, harassment) **directly affected Plaintiff because of her disabilities**.
- The **temporal proximity** between her EEO activity and adverse actions reinforces the causal link.
- **Pretext evidence** (comparator treatment, inconsistent supervisor action) confirms that the adverse action was **motivated by discriminatory animus**, not legitimate staffing concerns.

## 8. Conclusion

Plaintiff Regina Bryant has established a **prima facie Rehabilitation Act discrimination claim** because:

1. The Plaintiff is a **qualified individual with documented disabilities**.
2. The Plaintiff suffered **adverse employment actions**, including life-threatening FMLA leave rescission and persistent workplace harassment.
3. **Non-disabled comparators were treated more favorably**.
4. There is **strong evidence of pretext and temporal causation**.

Accordingly, **summary judgment is inappropriate**, and the claim should proceed to trial.

## D. Failure to Exhaustion Administrative Remedies.

Under the **Rehabilitation Act** and **Title VII**, federal employees must first **file a formal complaint with the agency's Equal Employment Opportunity (EEO) office** and complete the administrative process before pursuing claims in federal court. 29 C.F.R. § 1614.103; 29 U.S.C. § 794a(a)(1); 42 U.S.C. § 2000e-16(c).

### A. Federal-Sector Exhaustion Requirements

Under 29 C.F.R. § 1614:

A federal employee must:

1. Contact EEO counselor within 45 days
2. File formal complaint
3. Allow agency investigation
4. Receive Final Agency Decision or wait 180 days

The plaintiff completed all four.

That satisfies statutory exhaustion.

---

### Plaintiff Properly Exhausted All Administrative Remedies

Defendant argues that some of Plaintiff's claims should be dismissed for **failure to exhaust administrative remedies**. This argument **fails as a matter of law** because Plaintiff satisfied all exhaustion requirements under federal law before filing suit.

### PLAINTIFF FULLY EXHAUSTED ADMINISTRATIVE REMEDIES

### 1. Plaintiff Satisfied All Procedural Requirements

- Timely EEO contact
- Formal complaint filed
- Agency investigation conducted
- Final Agency Decision issued
- Civil action timely filed

The agency subsequently issued a **Final Agency Decision** that addressed all claims, confirming Plaintiff's **right to proceed to court**.

### 4. Conclusion

This section of the Motion for Summary Judgment should be **denied**.

## E. Bryant has not suffered adverse employment action

## Plaintiff Has Suffered Multiple Adverse Employment Actions

Under both the **Rehabilitation Act** and **Title VII**, an adverse employment action includes **any action by an employer that materially affects the terms, conditions, or privileges of employment**, or that **would dissuade a reasonable employee from engaging in protected activity**.

### 1. FMLA Leave Rescission Was an Adverse Action

Plaintiff's **FMLA leave for life-saving surgery** was **approved and then rescinded within hours** due to the actions of Chief Karan Kendrick and Administrator Teresa Holder. The rescission:

- **Forced a seven-month delay of critical uterine cancer surgery**, threatening Plaintiff's health and life.
- **Exacerbated her PTSD, anxiety, and depression**, requiring psychiatric treatment.
- **Created a coercive choice between her job and her life**,

### 2. Harassment and Hostile work environment. Denial of Reasonable Accommodations

Over 13 years, Plaintiff endured:

- Bullying, harassment, and forced to work in a hostile work environment
- Management created a hostile work environment for the plaintiff to work in.
- Management required the plaintiff to work on the same shift as a coworker who had harassed and bullied her for years,
- Despite management's knowledge of the harassment and despite Bryant's prior complaints Plaintiff was forced to continue working with her harasser.
- Despite plaintiff prior EEO complaints management Continue to exposed her to continued harassment and emotional distress.

Such conduct would plainly deter a reasonable employee from reporting discrimination.

## 3. Management's Failure to Remedy Known Harassment Supports an Adverse Action

- The Plaintiff also alleges that management was aware of the coworker's harassment because the individual was specifically identified in the plaintiff 's prior EEO complaints.
- An employer's **deliberate indifference to known harassment** may constitute an adverse employment action when it allows harassment to continue.
- Management knowingly permits harassment to continue after the plaintiff files discrimination complaints

Under the **Rehabilitation Act and Title VII**, a plaintiff may show pretext or discriminatory intent by proving that similarly situated employees **without disabilities or less serious medical conditions received more favorable treatment** under substantially similar circumstances.

## Plaintiff Has Suffered Severe Mental and Emotional Distress

### 4. Factual Record: Severe Mental and Emotional Impact

Plaintiff's record establishes the following:

1. **PTSD, anxiety, and depression worsened** as a direct result of workplace harassment and the rescission of her FMLA leave.
2. **Delay of life-saving uterine cancer surgery** for seven months caused **intense fear, stress, and emotional trauma**, knowing that her cancer could progress while she was forced to continue working.
3. **Psychiatric treatment and therapy** were required to manage stress and trauma caused by the VA Medical Center's interference and harassment.
4. The rescission forced Plaintiff into a **"choice between her life or her job,"** creating extreme emotional and psychological pressure.

### 5. Connection to Adverse Employment Actions

- The **FMLA leave rescission** was a direct adverse action tied to Plaintiff's prior **protected EEO activity** and her **disability status**.
- **Sustained harassment** over 12 years created a hostile work environment, amplifying stress and mental health harm.
- **Non-disabled co-worker** were not subjected to similar stress or medical interference, demonstrating discriminatory treatment.

### 4. Conclusion

Plaintiff has **clearly suffered adverse employment actions** through the **rescission of FMLA leave, denial of accommodations for Life threatening medical Condition., and ongoing harassment**, each of which **materially affected her terms and conditions of employment** and her health.

## F. Bryant has no evidence that nondisabled persons were treated more favorably

1. Even though no other employee had the **same life-threatening diagnosis**, the evidence shows that the chief of Sterle Processing Karan Kendrick **treated less serious medical needs more favorably than the plaintiff.** While it is true that no other employee had a diagnosis as serious as Plaintiff's uterine cancer and stage 3 Prolapse of the uterus. the record demonstrates that **other employees in the same department were routinely granted medical leave for elective procedures or less critical health issues**, even during **staffing shortages**.

---

### 2. Legal Standard

Under the **Rehabilitation Act and Title VII**, a plaintiff may show pretext or discriminatory intent by proving that similarly situated employees **without disabilities or less serious medical conditions received more favorable treatment** under substantially similar circumstances. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998). The comparison need not involve **identical medical severity**, only whether the **employer treated requests differently when the employees were similarly situated with respect to staffing and leave procedures.**

### 3. Favorable treatment of nondisabled persons

1. Multiple nondisabled employees in the **Sterile Processing Department** received **approved leave for medical procedures**, despite **similar staffing constraints**.
2. **Plaintiff's life-saving surgery**, however, was **rescinded within hours**, even after HR initially approved it.
3. **Chief Kendrick and Administrator (Teresa Holder intervened only in Plaintiff's case**, creating a **materially adverse difference in treatment**.
4. The rescission forced **Plaintiff to delay critical cancer surgery for seven months**, a delay that caused **severe emotional distress and worsening of PTSD and anxiety**.

### 4. Implications for Pretext and Retaliation

- **Disparate treatment**: Plaintiff was denied what others received.
- **Pretext**: Defendant's stated reasons for rescinding leave are undermined by inconsistent application.
- **Causal link**: Temporal proximity to Plaintiff's prior EEO complaints supports a **retaliation claim**.

## G. Defendant had a legitimate non-discriminatory reason for denying Bryant's request for advanced leave

# 1. Denying Leave for Cancer Treatment Is Evidence of Disability Discrimination

Defendant asserts that the **United States Department of Veterans Affairs** denied Bryant's request for advanced sick leave because she would not be able to repay the leave. However, even if this explanation qualifies as a legitimate reason, the record supports a reasonable inference that the stated justification is **pretext for unlawful discrimination and retaliation**.

## Rehabilitation Act: Cancer as a Disability

Under **Section 501 of the Rehabilitation Act of 1973**, federal employees are protected from disability discrimination. Section 501 incorporates the **Americans with Disabilities Act (ADA) standards**, including the **ADA Amendments Act of 2008 (ADAAA)**:

- **Disability:** "A physical or mental impairment that substantially limits one or more major life activities."
- **Cancer qualifies** because it substantially limits bodily functions (normal cell growth, immune system functioning, ability to work, etc.).
- **Statutory reference:** 29 U.S.C. § 791; 42 U.S.C. § 12102(1)(A) (ADAAA).

Cancer, especially when it delays treatment or surgery due to employer interference, **supports both FMLA and Rehabilitation Act claims**.

The Plaintiff's cancer diagnosis qualifies as a serious medical condition under the **Family and Medical Leave Act of 1993** and may also constitute a disability under the **Rehabilitation Act of 1973**.

Employers are prohibited from taking adverse employment actions against employees because of their disabilities or requests for disability-related accommodations.

By denying advanced sick leave despite medical documentation confirming Bryant's cancer diagnosis, the VA effectively penalized Bryant for seeking medical treatment for a serious health condition.

The plaintiff requested advanced sick leave for medically necessary treatment after being diagnosed with cancer. The VA's Human Resources department had access to Bryant's medical documentation confirming the seriousness of her condition.

Despite this documentation, Defendant denied the leave request based on speculation that Bryant might not be able to repay the advanced leave in the future.

2. Defendant contends that the denial of Plaintiff's advanced sick leave was based on the assumption. That the plaintiff would not be able to repay the advanced sick leave and staffing needs. That argument Falls apart under scrutiny. The record demonstrates:

1. they leave was initially approved.

2. it was rescinded within three hours following supervisory intervention;
3. leave without pay was also denied; and
4. the result was a seven-month delay of medically necessary cancer surgery. These facts create substantial evidence of pretext.

## I. The Initial Approval Undermines the Claimed the denying the advanced sick leave.

Human Resources approved Plaintiff's FMLA leave on December 21, 2022, at 12:32 p.m. This approval necessarily required a determination that:

- Plaintiff was eligible under FMLA.
- The medical certification supported leave.
- The request complied with applicable VA policies.

If staffing levels truly prevented leave, HR would not have approved it. The fact that approval occurred demonstrates that the request met policy requirements at that time.

Three hours later, at 3:51 p.m., the approval was rescinded—only after intervention by Chief Kendrick and Timekeeper Holder.

## II. Denial of Leave Without Pay Further Undermines the Defense

Even assuming arguendo that advanced sick leave could be denied for operational reasons, Defendant also denied Plaintiff's request for leave without pay (LWOP).

LWOP does not deplete agency sick leave banks and does not create financial burden to the employer. Its denial therefore cannot logically rest on the same justification as advanced leave.

The denial of both:

- Advanced sick leave; and
- Leave without pay

demonstrates that Defendant's decision was not tied to operational necessity but rather to a decision to prevent Plaintiff from taking leave at all.

## III. Forcing a Seven-Month Delay of Cancer Surgery Is Materially Adverse

The rescission and denial forced Plaintiff to reschedule life-saving uterine cancer surgery seven months later.

This delay:

- Increased psychological trauma and fear of cancer progression.
- Exacerbated Plaintiff's PTSD, anxiety, and depression.
- Required psychiatric treatment.

- Forced Plaintiff to choose between her health and continued employment.

Under an action is materially adverse if it would dissuade a reasonable employee from engaging in protected activity. Interfering with life-saving cancer surgery unquestionably meets that standard.

# IV. Denial of Medically Necessary Leave Suggests Retaliation and Discrimination

The VA's speculative reasoning becomes even more suspect when viewed in context:

- Bryant had **previously filed EEO complaints** alleging harassment and disability discrimination.
- HR initially **approved her leave**, only to rescind it later after intervention by supervisors allegedly hostile to Bryant.
- Denying medically necessary leave **directly affected Bryant's ability to undergo timely treatment for cancer**, exacerbating emotional distress and PTSD.

A reasonable jury could conclude that **the repayment concern was a pretext** for retaliation and disability discrimination, especially given the timing and context of the denial.

# H. Bryant has not suffered a materially adverse employment action

The rescission of approved medical leave for cancer surgery, denial of both advanced sick leave and leave without pay, and the resulting seven-month delay of life-saving surgery constitute materially adverse actions under both discrimination and retaliation standards

## 1. Rescinding Approved Cancer Surgery Leave Is Materially Adverse

Plaintiff's FMLA leave was formally approved by HR. Three hours later, following supervisory intervention, that approval was rescinded.

The rescission:

- Prevented Plaintiff from undergoing medically necessary uterine cancer surgery.
- Forced postponement of surgery for seven months.
- Required Plaintiff to continue working while diagnosed with cancer.
- Exacerbated PTSD, anxiety, and depression.
- Resulted in psychiatric treatment and therapy.

An employment action that forces an employee to delay cancer treatment is not trivial. It directly affects health, financial stability, and continued employment.

### 2.Forcing the plaintiff to Work with a Known Harasser is Materially Adverse

The plaintiff was also forced to work on the same shift as a coworker who had harassed and bullied her for years. This coworker had been **specifically identified in the plaintiff's prior EEO complaints**, yet management failed to separate them.

Instead, the coworker **followed Bryant across shifts and continued the harassment**, causing severe emotional and psychological distress.

A reasonable employee would clearly be discouraged from filing EEO complaints if doing so could lead to:

- denial of medically necessary medical leave, and
- continued exposure to a known workplace harasser.
- **exposing an employee to a known harasser after protected activity may constitute a materially adverse action** because it can discourage employees from reporting discrimination

Because the evidence demonstrates conduct that could easily deter a reasonable worker from engaging in protected activity, the plaintiff has satisfied the **materially adverse action requirement.**

# I. Bryant cannot Prove causation

## A. Causation Is Established Through Temporal Proximity and Knowledge

The plaintiff's protected activity, including filing EEO complaints regarding harassment and discrimination, directly preceded the adverse actions taken against her:

1. Management forced her to continue working with a coworker who had previously harassed her.
2. Medically necessary advanced sick leave was rescinded despite medical documentation confirming her cancer diagnosis.
3. Supervisors ignored repeated complaints and allowed ongoing harassment to persist.

This **close temporal proximity** supports a reasonable inference that the adverse actions were retaliatory.

### B. Causation, Pretext, and Cat's Paw Liability: A Unified Narrative of Retaliation

The evidence in this case, taken in its entirety, demonstrates that the plaintiff's protected activity directly caused the adverse actions she experienced, that the VA's stated justifications are pretextual, and that supervisory influence links those actions to the agency under the **Cat's Paw doctrine**. Viewed collectively, this evidence creates a powerful jury question regarding retaliation.

## C. Cat's Paw Liability Connects Supervisors' Retaliatory Animus to Agency Decisions

Even if HR formally rescinded the plaintiff's leave, the agency may be held liable under the **Cat's Paw theory**, which establishes that an employer is responsible for a decision influenced by a supervisor with retaliatory animus.

In this case:

- The plaintiff's direct supervisors knew of her protected activity and had previously failed to stop harassment.
- Those same supervisors allegedly **intervened with HR** to rescind medically necessary leave.
- The supervisors' retaliatory animus, therefore, became the **proximate cause of the VA's adverse employment decision**.

Under Cat's Paw principles, the agency cannot escape liability simply because HR executed the formal leave denial. A jury may reasonably conclude that **the supervisors' retaliation drove the agency's actions**

## D. The VA's Stated Reasons Are Pretextual

The VA asserts that the denial of advanced sick leave was based on concerns that the plaintiff might not repay the leave.

- HR initially approved the leave before intervention by supervisors.

- Medical records confirmed the necessity of leave for life-saving cancer treatment.
- Supervisory intervention directly influenced the reversal of leave approval.

The VA's explanation is directly contradicted by the sequence of events, the medical documentation, and the involvement of retaliatory supervisors.

## Conclusion

The plaintiff's claims survive summary judgment because the evidence demonstrates:

- A causal connection between protected activity and adverse actions,
- Employer explanations that are unworthy of credence, and
- Supervisory influence that links retaliatory animus to the agency under Cat's Paw principles.

A reasonable jury could find that the VA retaliated against the plaintiff for engaging in protected activity. Summary judgment should therefore be denied.

Respectfully submitted

Regina Bryant

11410 Scottwood Ave
Cleveland, Ohio 44108

# CERTIFICATE OF SERVICE

**I hereby certify that on March 6, 2026, a copy of Foregoing Plaintiff's Memorandum in opposition to defendant's motion for summary judgment was mailed U.S mail to the following:**

Renee A. Bacchus
Assistant United states Attorney
801 West Superior Ave Suite 400
Cleveland, Ohio 44113-1852

Regina Bryant