**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**

| | |
|---|---|
| **Regina Bryant,** | **Case No. 1:25-cv-166-PAB** |
| **Plaintiff,** | |
| **-vs-** | **JUDGE PAMELA A. BARKER** |
| **Douglas A. Collins, Secretary of the U.S. Department of Veterans Affairs,** | **MEMORANDUM OPINION AND ORDER** |
| **Defendant.** | |

Currently pending before the Court is the Motion for Summary Judgment of Defendant Douglas A. Collins, Secretary of the United States Department of Veterans Affairs ("Defendant"), filed January 16, 2026 ("the Motion"). (Doc. No. 29.) On March 6, 2026, Plaintiff Regina Bryant ("Plaintiff" or "Bryant") filed a Brief in Opposition to the Motion (the "Opposition"). (Doc. No. 34.) On March 19, 2026, Defendant filed a Reply Brief in support of the Motion (the "Reply"). (Doc. No. 35.)

For the following reasons, Defendant's Motion is **GRANTED**.

## I. Background

Bryant was employed as a Medical Supply Technician at the VA Medical Center in Cleveland, Ohio for at least eleven years.[1] (Doc. No. 15-1, PageID#s 192-93.) Karen Kendrick is the Chief of the Sterile Processing Service and Bryant's immediate supervisor. (Dep. of Regina Bryant (Doc. No. 29-4) (hereinafter "Bryant Dep."), pg. 92.) In November 2022, Bryant was

---

[1] The parties appear to dispute if Plaintiff has worked for Defendant for 11, 12, or 13 years. (Doc. No. 29-1, PageID# 857; Doc No. 34, PageID# 1023, 1039.) Regardless, Plaintiff had worked for Defendant for well over a year when she filed the Complaint. *See* 5 U.S.C. § 6381 (defining an employee under Title II of the FMLA as one who "has completed at least twelve months of service").

diagnosed with uterine cancer. (Doc. No. 15, PageID# 162.) However, Bryant never shared her diagnosis with her supervisor. (Bryant Dep., pg. 117.) Her doctor scheduled her to have surgery on December 28, 2022. (Doc. No. 15, PageID# 163.) On November 23, 2022, Bryant originally requested 300 hours of Advanced Annual Leave to cover her absence between December 27, 2022 and February 16, 2023. (Bryant Dep., PageID# 918). Bryant also checked the box to indicate she was invoking her entitlement to Family Medical Leave. (*Id.*) Bryant had previously been approved for intermittent FMLA leave for other medical conditions but not for cancer or the related surgery. (*Id.*, pgs. 9-10.)

Two weeks later, on December 12, 2022, Bryant submitted a fax to the VA's Human Resources Department ("HR") that was a revised "Request for Leave or Approved Absence" requesting 240 hours of Advanced Sick Leave between December 28, 2022 and February 27, 2023, and Leave Without Pay. (*Id.*, PageID# 922.) On the revised form, Bryant did not invoke leave under FMLA. (*Id.*) Bryant also requested eight hours of Sick Leave through the electronic time and attendance system, to cover her scheduled shifts on December 27-28, 2022. (Doc. No. 15-1, PageID# 193.) Bryant had 4.30 hours of accrued Sick Leave at the time of her request. (*Id.*) Kendrick approved her Sick Leave request the same day. (*Id.*)

On December 15, 2022, an HR Specialist emailed Kendrick an "Advanced Leave Memo," which confirmed that Bryant requested 240 hours of Advanced Sick Leave and 96 hours of Leave Without Pay. (*Id.*, PageID#s 193-94.) The memo documented that Bryant had exhausted her current leave balance. (*Id.*, PageID # 194.) On December 21, 2022, Teresa Holder, the Office Timekeeper, checked the "Not Recommended" box on Kendrick's behalf even though the "Approved" box was highlighted. (*Id.*) On December 21, 2022, an HR Specialist emailed Bryant indicating that her leave

had been approved. (*Id.*) Hours later, the same HR Specialist sent a follow-up email stating that "[t]he previous approval…was sent in error" and attached a copy of the leave memo with the box for "[D]enied" highlighted. (*Id.*) As mandated by VA Policy, the senior executive for SPS, Associate Director of Patient Care Services Garett E. Scheier, not Kendrick or Holder, was the final decision maker on whether Ms. Bryant's request for advance leave was approved. (Bryant Dep., PageID# 936.)

On December 22, 2022, Bryant submitted a second revised "Request for Leave or Approved Absence," requesting 328 hours of Leave Without Pay. (Doc. No. 15-1, PageID# 194.) On December 26, 2022, Holder notified the HR Specialist that Kendrick was recommending the request be denied because "[t]he service does not feel [Bryant] prudently uses her leave and also staffing is also [a] reason for disapproval." (*Id.*) Plaintiff argues that because of this denial, she was forced to re-schedule her surgery for a later date, which exacerbated her anxiety and Post Traumatic Stress Disorder. (Doc. No. 34, PageID# 1023.)

Bryant rescheduled her surgical procedure for July 14, 2023. (*Id.*, PageID# 195.) On May 26, 2023, Bryant submitted to HR "updated 'FMLA paperwork'" which included medical documentation from her treating physician verifying her diagnosis and course of treatment and a request for eight weeks of FMLA leave. (*Id.*) On May 30, 2023, she contacted HR to clarify that she was requesting six weeks of FMLA leave rather than eight. (*Id.*) On June 13, 2023, the HR Specialist sent Kendrick an "Advanced Leave Memo," informing her that Bryant had requested 120 hours of Annual and Sick Leave "to cover absences due to a surgical procedure scheduled on July 14, 2023." (*Id.*) In the memo, HR Specialist noted that Bryant had 26 hours of available Annual Leave and 16.30 hours of accrued Sick Leave. (*Id.*)

On June 15, 2023, Kendrick emailed Bryant requesting "documentation from [her] physician on the surgical procedure and time that [she] will be out." (Bryant Dep., PageID# 931.) Shortly thereafter, Kendrick emailed the HR Specialist requesting "supporting documents on the time that [Bryant] will be out due to the surgical procedure" and noting that she "cannot approve the Advanced Leave until [she] ha[s] specifics of the time [Bryant] will be out.'" (Doc. No. 15-1, PageID# 195.) The next day, Bryant responded to Kendrick that she had already submitted verifying documentation to HR, including "the dates that [Bryant's] physician requested for [her] to be off." (Bryant Dep., PageID# 933.) Kendrick replied that HR could not share Bryant's FMLA paperwork with her so she needed to provide the requested information so that she could plan for staffing needs. (*Id.*, PageID# 934.) VA Policy authorizes supervisors to request additional information in support of sick leave requests in excess of three workdays. (*Id.*, PageID# 937.)

Kendrick recommended denying the request for Advanced Leave because Bryant "continues to use up her time and FMLA time for the last 3 years" making it "difficult for [Bryant] to make up the advanced leave." (Doc. No. 15-1, PageID# 196.) Kendrick also noted that "[t]he tour of duty is down staff members and providing the advanced leave would impede operations for the shift." (*Id.*) On June 26, 2023, HR informed Bryant that Kendrick recommended that her request for advanced leave be denied. (*Id.*) However, on July 7, 2023, HR issued Bryant a FMLA approval letter, stating that she had been approved for leave from July 14, 2023 to August 28, 2023. (*Id.*) On July 10, 2023, Bryant submitted her request for FMLA leave through the electronic time and attendance system. (Doc. No. 15-1, PageID# 196.)

On July 12, 2023, Kendrick emailed Bryant that Kendrick still needed paperwork from Bryant's physician stating she "will be out due to a surgical procedure and a proposed return date."

(*Id.*) Bryant told Kendrick that HR had emailed Kendrick the FMLA approval letter, including Bryant's leave dates. (Bryant Dep., PageID# 933.) Kendrick replied that she just returned from vacation and was catching up on emails. (Doc. No. 15-1, PageID# 196.) The same day, Kendrick confirmed that she had received the email from HR and approved Bryant's time off (leave without pay) in the electronic system. (*Id.*)

On July 26, 2023, Bryant initiated the EEO process by contacting an EEO counselor. (*Id.*, PageID# 192.) She alleged that management subjected her to a hostile work environment due to physical disability and retaliated against her for prior EEO activity "[when], in June and July 2023, management requested verifying medical documentation in support of [her] requests for advance leave and subsequently denied [her] leave requests." (*Id.*) On August 18, 2023, Bryant filed a formal EEO complaint, alleging that management also discriminated against her by denying her requests for Advanced Leave in December 2022. (*Id.*, PageID# 190.) The VA Office of Resolution Management, Diversity, and Inclusion ("ORM") dismissed Bryant's December 2022 and June 2023 leave denials due to "untimely EEO Counselor contact." (*Id.*)

The VA's Office of Employment Discrimination Complaint Adjudication held that Kendrick denied Bryant's Advanced Leave requests "due to [Bryant's] documented leave patterns, as opposed to her membership in a protected class" and ultimately found that Kendrick's 2022 and 2023 denials were based on "legitimate, nondiscriminatory reason[s]." (*Id.*, PageID# 204.)

Bryant claims that Kendrick harassed her by assigning Dionna Arthur, a fellow Sterile Processing Technician, to work the same shift as her. (Doc. No. 15-1, PageID# 196; Bryant Dep., pgs. 148-49.) Plaintiff accuses Arthur of bullying and threatening her. (*Id.*) Bryant testified that (1) she and Arthur do not speak to one another and did not speak to one another as early as January

2023; (2) Arthur has never physically assaulted her; and (3) Arthur has never said anything derogatory or verbally abusive to her. (*Id.*)

## II. Procedural History

Bryant filed her Complaint in this Court on January 30, 2025. (Doc. No. 1.) On May 28, 2025, Bryant filed her Amended Complaint. (Doc. No. 15.) Therein, she asserts ten (10) claims: (1) "Intentional Infliction of Emotional distress"; (2) "Emotional Anguish"; (3) "Mental distress"; (4) "Discrimination Based on Disability"; (5) "Harassment/Hostile work environment"; (6) Retaliation for prior EEO activity;" (7) "Negligent Emotional distress"; (8) "FMLA Interference with right to take Leave"; (9) "Willful Violation under the family and medical leave act"; and (10) "Family medical leave Discrimination." (*Id.* at PageID# 157.) Bryant attached thereto a "Transmittal of Final Agency Decision" from the "Department of Veterans Affairs Office of Employment Discrimination Complaint Adjudication." (Doc. No. 15-1 at PageID# 188.)

On June 10, 2025, Defendant filed an Answer and its Partial Motion to Dismiss, seeking to dismiss Bryant's claims for Intentional Infliction of Emotional Distress ("IIED") and Negligent Infliction of Emotional Distress ("NIED") for failure to exhaust her administrative remedies.[2] (Doc. Nos. 18, 19.) On October 7, 2025, this Court issued its Memorandum Opinion and Order, granting Defendant's Partial Motion to Dismiss, and dismissing Plaintiff's IIED and NIED claims. (Doc. No. 25.)

On January 16, 2026, Defendant filed the Motion. (Doc. No. 29.) On February 4, 2026, Plaintiff filed an opposition to the Motion, but Defendant moved to strike the filing on February 12,

[2] Because "emotional anguish" and "mental distress" are not private causes of action, this Court grants summary judgment in favor of Defendant as to these claims to the extent that they were not already disposed of in this Court's previous Memorandum Opinion and Order.

2026, arguing that the opposition exceeded the page limitation in violation of Rule 7.1 of the Local Civil Rules of the Northern District of Ohio and relied on non-existent case law. (Doc. Nos. 30, 31.) On February 24, 2026, Plaintiff sought to withdraw the opposition and filed a Motion for Leave to Exceed Page Limitations, and the next day, the Court granted her requests, permitting her to withdraw her opposition and file an amended opposition not exceeding thirty pages in length. (Doc. Nos. 32, 33); Non-Doc Order dated Feb. 25, 2026. On March 6, 2026, Plaintiff filed the Opposition to which Defendant replied on March 19, 2026. (Doc. Nos. 34, 35.) Thus, the Motion is ripe for this Court's review.

## III. Standard of Review

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is 'genuine' only if based on evidence upon which a reasonable jury could return a verdict in favor of the non-moving party." *Henderson v. Walled Lake Consol. Sch.*, 469 F.3d 479, 487 (6th Cir. 2006). "Thus, 'the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.'" *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). A fact is "material" only "if its resolution might affect the outcome of the suit under the governing substantive law." *Henderson*, 469 F.3d at 487.

At the summary judgment stage, "[a] court should view the facts and draw all reasonable inferences in favor of the non-moving party." *Pittman v. Experian Info. Solutions, Inc.*, 901 F.3d 619, 628 (6th Cir. 2018). In addition, "the moving party bears the initial burden of showing that there is no genuine dispute of material fact." *Ask Chems., LP v. Comput. Packages, Inc.*, 593 F.

App'x 506, 508 (6th Cir. 2014). The moving party may satisfy this initial burden by "identifying those parts of the record which demonstrate the absence of any genuine issue of material fact." *Lindsey v. Whirlpool Corp*., 295 F. App'x 758, 764 (6th Cir. 2008). "[I]f the moving party seeks summary judgment on an issue for which it does not bear the burden of proof at trial," the moving party may also "meet its initial burden by showing that 'there is an absence of evidence to support the nonmoving party's case.'" *Id*. (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the moving party satisfies its burden, "the burden shifts to the non-moving party who must then point to evidence that demonstrates that there is a genuine dispute of material fact for trial." *Ask Chems*., 593 F. App'x at 508–09. "[T]he nonmoving party may not simply rely on its pleading, but must 'produce evidence that results in a conflict of material fact to be solved by a jury.'" *MISC Berhad v. Advanced Polymer Coatings, Inc*., 101 F.Supp.3d 731, 736 (N.D. Ohio 2015) (quoting *Cox*, 53 F.3d at 150).

## IV. Analysis

### A. Plaintiff cannot rely on Defendant's December 2022 denial of her request for FMLA leave because Plaintiff she failed to administratively exhaust this claim.

In the Motion, Defendant argues that some of Bryant's claims, specifically those based on Defendant's denial of Plaintiff's request for leave in December 2022, are subject to dismissal for failure to exhaust administrative remedies because Plaintiff did not initiate the EEO process until July 26, 2023. (Doc. No. 29-1, PageID# 869.) In the Opposition, Plaintiff argues that she did satisfy the administrative exhaustion requirement and contacted her EEO counselor within 45 days. (Doc. No. 34, PageID#s 1024, 1041.) In the Reply, Defendant reiterates that it is entitled to summary judgment on the unexhausted claims, pointing out that Bryant "has not come forth with any evidence that she contacted EEO within forty-five (45) days of the denial of the leave requests submitted in

December 2022" and "does not dispute the date she first contacted EEO, July 26, 2023." (Doc. No. 35, PageID# 1051.) This Court finds that Defendant's denial of Plaintiff's request for leave in December 2022 is not actionable because Plaintiff failed to administratively exhaust her remedies.

The Rehabilitation Act of 1973 is "the exclusive remedy for a federal employee alleging disability-based discrimination." *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007); 29 U.S.C. § 791 *et seq; see also* 29 C.F.R. § 1614.103(a). Federal employees must pursue all available administrative remedies before resorting to the courts for Rehabilitation Act claims. *Steiner v. Henderson*, 354 F.3d 432, 434-35 (6th Cir. 2003) ("Congress conditioned the government's waiver of sovereign immunity upon a plaintiff's satisfaction of rigorous administrative exhaustion requirements and time limitations."); *see also Bryant v. Wilkie*, 834 Fed. Appx. 170, 173 (6th Cir. 2020), (citing *Smith v. U.S. Postal Serv.*, 742 F.2d 257, 262 (6th Cir. 1984)) (clarifying that the exhaustion requirement of Title VII also applies to Rehabilitation Act claims). Exhaustion of administrative remedies is a condition precedent to suing in federal court and is "like a statute of limitations." *Mitchell v. Chapman*, 343 F.3d 811, 819-820 (6th Cir. 2003) (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 394 (1982); *Truitt v. Cnty. of Wayne*, 148 F.3d 644, 646 (6th Cir. 1998)).

The first administrative step federal employees must take is to contact an EEO counselor within 45 days of the date the discrimination occurred. 29 C.F.R. § 1614.105(a)(1). The employee then can accept alternative dispute resolution or file a formal complaint within 15 days of receiving notice of her right to do so. 29 C.F.R. § 1614.105(d); 29 C.F.R. § 1614.106(b). After the complaint is filed, the agency has 180 days to complete its investigation and cannot extend this without the employee's express written consent. 29 C.F.R. § 1614.108(a), (e). While the investigation is

ongoing, the employee may amend her complaint "to include issues or claims like or related to those raised in the complaint." 29 C.F.R. § 1614.106(d). Any amendments, if they are new charges, are treated the same as the original charges under 29 C.F.R. § 1614.105(a)(1) and must be filed within 45 days of the occurrence of the underlying events. If those new charges are not filed within that 45-days' time, the employee is permanently foreclosed from meeting the statutory prerequisites and cannot exhaust her administrative remedies to meet the condition precedent to pursuing recourse in federal court. *Mitchell*, 343 F.3d at 820.

Bryant claims that Defendant unlawfully discriminated against her when it denied her request for advanced leave in December 2022, but Bryant failed to contact an EEO counselor regarding this claim until July 26, 2023. (Doc. No. 15-1, PageID# 189.) As Defendant points out, Bryant "has not come forth with any evidence that she contacted EEO within forty-five (45) days of the denial of the leave requests submitted in December 2022" and "does not dispute the date she first contacted EEO, July 26, 2023." (Doc. No. 35, PageID# 1051.)[3] Plaintiff's failure to contact an EEO counselor regarding Defendant's denial of her request for advanced leave in December 2022 within forty-five days of that denial is fatal to her claim. Thus, Plaintiff cannot rely on Defendant's December 2022 denial of her request for annual leave to support any of her claims. Accordingly, this Court is left to adjudicate Plaintiff's claims premised upon (1) Kendrick's emails to Bryant requesting that she provide documentation as to the time she would be out for the surgery; (2) Kendrick's June 15, 2023 recommendation that her request for leave be denied; and (3) Kendrick assigning Dionna Arthur to

[3] Defendant correctly asserts that in a previous action, Bryant had attempted to amend her complaint to include Defendant's December 2022 denial of her request for annual leave, and in response to Defendant's argument that she failed to exhaust her remedies, Bryant admitted that she "completely forgot about the EEO process." *Bryant v. McDonough*, No. 1:24-CV-1135 (Doc. No. 35, PageID# 609) (N.D. Ohio Feb. 27, 2023). This Court ultimately denied her request to amend. *Id*. at (Doc. No. 37) (Mar. 10, 2023).

work the same shift as Plaintiff.

**B. Plaintiff cannot bring a private cause of action under the FMLA.**

Plaintiff's Amended Complaint includes claims for: "FMLA Interference with right to take Leave" (Count 8); "Willful Violation under the family and medical leave act" (Count (9); and "Family medical leave Discrimination (Count 10)." But according to Defendant, because Plaintiff is a federal civil service employee governed by the provisions of Title II of the FMLA and Title II does not expressly waive the government's sovereign immunity, private suits to enforce its provisions are barred. In other words, Plaintiff has no private cause of action under the FMLA. (Doc. No. 29-1, PageID# 863.)

The Court agrees that as a federal employee for at least eleven years who was appointed pursuant to Title 5 of the U.S. Code, Plaintiff is subject to the provisions of Title II of the FMLA. 5 U.S.C. § 6381 *et seq*.[4] (Defendant's Exhibit A – Jindra Decl. ¶ 2.) And although the Sixth Circuit has not expressly ruled on the issue, this Court agrees with at least three circuit courts of appeals that have held that "federal employees covered by Title II may not bring lawsuits based on FMLA violations." *Doucette v. Johnson*, 2017 WL 840406, at *3 (E.D. Mich. Mar. 3, 2017). *See Russell v. U.S. Dep't of the Army*, 191 F.3d 1016, 1018 (9th Cir. 1999) ("While Title I and Title II employees under the FMLA are afforded equivalent rights to leave time, Title I expressly provides a private right of action to remedy employer action violating FMLA rights."); *Mann v. Haigh*, 120 F.3d 34, 37 (4th Cir. 1997) ("No unequivocal waiver of immunity exists in Title II, and, consequently, the omission of a provision in Title II similar to that in Title I creating a private right of action is treated as an affirmative congressional decision that the employees covered by Title II of the FMLA should

[4] Title I governs leave for private employees and federal employees not covered by Title II. 29 U.S.C. § 2601 *et seq.*

not have a right to judicial review of their FMLA claims through the FMLA."); *Cavicchi v. Sec'y of Treasury*, 2004 WL 4917357 (11th Cir. Oct. 15, 2004) (same). Indeed, in the Opposition, Plaintiff "acknowledges that as a Title II federal employee, she does not possess a standalone private right of action under the FMLA," and Defendant reaffirms this point in its Reply. (Doc. No. 34, PageID# 1024; Doc. NO. 35, PageID# 1053.) Thus, this Court grants summary judgment in favor of Defendant and against Plaintiff on Counts 8, 9 and 10 of Plaintiff's Amended Complaint.

**C. Plaintiff's retaliation claim fails as a matter of law.**

Plaintiff's Sixth Count in her Amended Complaint is for "[r]etaliation for prior EEO activity." (Doc. No. 15, PageID# 157.) "Retaliation claims by federal employees alleging disability-based discrimination are governed by the Rehabilitation Act." *See Johnson v. DeJoy*, 2024 WL 2874573, at *6 (6th Cir. June 7, 2024) (citing *Bledsoe v. Tenn. Valley Auth. Bd. of Dirs.*, 42 F.4th 568, 578 (6th Cir. 2022)); *see also Bryant v. McDonough*, 2025 WL 2799412, at *2 (N.D. Ohio Sept. 30, 2025) (applying the Rehabilitation Act to Plaintiff's retaliation claim where Plaintiff had alleged disability discrimination). Here, Plaintiff alleges disability discrimination and that Defendant retaliated against her after she engaged in EEO proceedings related to the exercise of her rights under the Rehabilitation Act. (Doc. No. 15, PageID# 157.) Thus, this Court will construe Plaintiff's retaliation claim as one brought under the Rehabilitation Act. *See* (*id.*)[5] Assuming without deciding that Plaintiff could bring a private cause of action against Defendant for retaliation under § 501 of

[5] This Court declines to evaluate Defendant's argument that Plaintiff cannot bring a private cause of action for retaliation under § 501 of the Rehabilitation Act. The Sixth Circuit has held that "§ 504 of the Rehabilitation Act does not provide a cause of action for retaliation." *Smith v. Mich. Dep't of Corrs*., 159 F.4th 1067, 1071 (6th Cir. 2025). Plaintiff brings this cause of action under § 501 as opposed to § 504 of the Rehabilitation Act, but Defendant argues that the holding in *Smith* should be applied to claims brought under § 501. (Doc. No. 34, PageID# 1026; Doc. No. 29-1, PageID# 865.) This Court need not reach this argument because even if the law permits Plaintiff to bring a private cause of action under § 501, her claim would fail because she has not shown she was subjected to an adverse employment action.

the Rehabilitation Act, such claim would fail because Plaintiff has not established a prima facie case for retaliation.

For a plaintiff to have a valid retaliation claim under the Rehabilitation Act, she must show that she "(1) engaged in a protected activity; (2) the defendant had knowledge of [her] protected conduct; (3) the defendant took an adverse employment action toward [her]; and (4) there was a causal connection between the protected activity and the adverse employment action." *Chan v. PNC Bank*, 2024 WL 1328610, at *6 (quoting *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 523 (6th Cir. 2008) (internal citations omitted)). Filing a discrimination claim with the EEOC is a protected activity. *Gribcheck v. Runyon,* 245 F.3d 547, 551 (6th Cir. 2001). "Adverse employment action is an action by the employer that constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Regan v. Faurecia Auto. Seating, Inc.*, 679 F.3d 475, 479 (6th Cir. 2012).

To the extent that Plaintiff's retaliation claim is based on either (1) Kendrick's emails to Bryant requesting that she provide documentation as to the amount of time she would be out for the surgery, (2) Kendrick's June 15, 2023 recommendation that her request for leave be denied, or (3) Kendrick assigning Dionna Arthur to the same shift as Plaintiff, the Court finds that none of these actions rise to the level of an adverse employment action. First, as to Kendrick's email to Plaintiff requesting the dates she would be out for surgery, as Defendant points out, the VA's policy authorizes supervisors to request this information when a party applies for leave that is more than three days long, and here, Kendrick noted that she needed the information to determine staffing. This action of requesting the time Bryant would be out for the surgery does not result in a significant

change in Bryant's employment status.

Second, although Kendrick initially recommended that Bryant's renewed request for leave be denied in June 2023, Plaintiff's request for advanced leave was approved, and as Defendant notes, the senior executive for SPS, Garett E. Scheier, not Karen Kendrick, was the final decision maker as to requests for advanced leave. Plaintiff cannot argue a condition of her employment was materially changed when she ultimately received the unpaid leave that she requested.

Third, Kendrick's assignment of Dionna Arthur to work the same shift as Bryant did not cause a significant change in her employment status. *See Bryant v. McDonough*, 2025 WL 2799412, at *4 (N.D. Ohio Sept. 30, 2025) ("[T]he Sixth Circuit in *Bowman v. Shawnee State University*, 220 F.3d 456, 462 (6th Cir. 2000) held that *de minimis* employment actions, such as short-term job reassignments without the loss of income, do not as a matter of law 'rise to the level of a materially adverse employment decision.'"). Accordingly, the Court grants summary judgment in favor of Defendant and against Plaintiff on Bryant's retaliation claim set forth in Count 6 of the Amended Complaint.

**D. Plaintiff was not subjected to conduct so severe or pervasive as to create a hostile work environment.**

In the Motion, Defendant argues that Plaintiff's hostile work environment cause of action set forth in Count 5 of the Amended Complaint fails because Plaintiff has not established that her supervisors or her co-worker, Dionna Arthur, engaged in conduct so extreme as to alter the terms and conditions of her employment. (Doc. No. 29-1, PageID#s 875-76) (citation omitted). In the Opposition, Plaintiff argues that she was forced to work on the same shift as a co-worker who harassed and bullied her and that management was aware of this harassment. (Doc. No 34, PageID#

1042.)[6] In the Reply, Defendant repeats that its alleged acts were not so severe or pervasive necessary as to create a hostile work environment. (Doc. No. 35, PageID# 1061.) This Court agrees with Defendant that Plaintiff's hostile work environment claim fails as a matter of law.

As a preliminary matter, it is unclear whether Plaintiff is bringing a traditional hostile work environment claim or a retaliatory hostile work environment claim. In the Opposition, Plaintiff states that she is a member of protected class because she is a "Schedule A federal employee with multiple disabilities, including Autism Spectrum Disorder, ADHD, Dyslexia, Dyscalculia, Dysgraphia, sensory disorders, PTSD, depression, and anxiety" and that "[s]he is also in a protected class by virtue of engaging in prior EEO activity, including filing formal complaints." (Doc. No. 34, PageID# 1031.). Plaintiff appears to conflate the two causes of action. However, this distinction does not affect this Court's analysis because "the touchstone of any hostile work environment claim, including a retaliatory hostile work environment claim, is whether 'the workplace is permeated with "discriminatory intimidation, ridicule, and insult" that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."'" *Khamati v. Sec'y of the Dept. of the Treasury*, 557 Fed. Appx. 434, 442 (6th Cir. 2014) (quoting *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 65 (1986)). And here the Court finds that Plaintiff has failed establish that Defendant subjected her to harassment so extreme so as to create a hostile work environment.

To establish a prima facie case of retaliatory hostile work environment, a plaintiff must demonstrate the following four elements: (1) the plaintiff engaged in a protected activity; (2) the

[6] Plaintiff adds that "FMLA [l]eave [r]escission [w]as an [a]dverse [a]ction." (Doc. No. 34, PageID# 1042.) This Court has already explained that Defendant's December 2022 denial of Plaintiff's request for leave is not actionable due to Plaintiff's failure to exhaust administrative remedies. Thus, this Court need not address this argument.

defendant knew this; (3) the defendant subjected the plaintiff to severe or pervasive retaliatory harassment; and (4) the protected activity is causally connected to the harassment. *Khamati*, 557 Fed. Appx. at 442*; see also Morris v. Oldham Cnty. Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000); *Dean-Lis v. McHugh*, 598 Fed. Appx. 412, 415 (6th Cir. 2015).

To establish a disability-based hostile-work-environment claim, "a plaintiff must show that (1) [s]he is disabled; (2) [s]he 'was subjected to harassment, either through words or actions, based on' h[er] disability; (3) the harassment 'create[ed] an objectively intimidating, hostile, or offensive work environment' that 'produce[d] "some harm respecting an identifiable term or condition of employment"'; and (4) 'there is some basis of liability on the part of the employer.'" *Kellar v. Yunion*, *Inc.*, 157 F.4th 855, 873 (6th Cir. 2025) (quoting *McNeal v. City of Blue Ash*, 117 F.4th 887, 898, 904, 906 (6th Cir. 2024) (quoting *Crawford v. Medina Gen. Hosp.*, 96 F.3d 830, 834-35 (6th Cir. 1996) and *Muldrow v. City of St. Louis*, 601 U.S. 346, 355 (2024))).

Regardless of the test being applied, "the touchstone of any hostile work environment claim, including a retaliatory hostile work environment claim, is whether 'the workplace is permeated with "discriminatory intimidation, ridicule, and insult" that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."'" *Khamati*, 557 Fed. Appx. at 443 (quoting *Vinson,* 477 U.S. at 65). Courts consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (quoting *Harris v. Forklift Sys, Inc*., 510 U.S. 17, 23 (1993)).

Plaintiff claims that Defendant subjected her to harassment when Plaintiff was assigned to work the same shift as Dionna Arthur, whom she accused of bullying. Bryant testified that (1) she

and Arthur do not speak to one another and did not speak to one another as early as January 2023; (2) Arthur has never physically assaulted her; and (3) Arthur has never said anything derogatory or verbally abusive to her. (Bryant Dep., pgs. 148-49). Being forced to work with someone whom Bryant dislikes or who dislikes her is not conduct so extreme as to create a hostile work environment. *See Barnett v. Dep't of Veterans Affs*., 153 F.3d 338, 342-43 (6th Cir. 1998) (conflicts between employees based upon personal issues do not equate to discriminatory animus). For these reasons, Plaintiff's claims for hostile work environment and retaliatory hostile work environment fail as a matter of law because Plaintiff has not established that Defendant subjected her to harassment so extreme so as to create a hostile work environment. Thus, this Court grants summary judgment in favor of Defendant as to Plaintiff's hostile work in environment claim.

**E. Plaintiff's claim for disability discrimination fails as a matter of law.**

In the Motion, Defendant argues that this Court should grant summary judgment in its favor on Plaintiff's disability discrimination claim because (1) Plaintiff has not suffered an adverse employment action; (2) Plaintiff has no evidence that nondisabled persons were treated more favorably; and (3) Defendant had a legitimate non-discriminatory reason for denying Bryant's request for advanced leave.[7] (Doc. No. 29-1, PageID#s 871-73.) In the Opposition, Plaintiff argues that Defendant discriminated against her when it denied her request for leave in December 2022[8] and that similarly situated employees were treated more favorably than her. (Doc. No. 34, PageID#s 1042, 1044.) In the Reply, Defendant points out that Plaintiff identifies no comparators to support

[7] This Court declines to address Defendant's argument that it had a legitimate non-discriminatory reason for denying Plaintiff's request for leave because it finds Plaintiff's claim fails for other reasons as set forth herein.

[8] This Court has already explained that Defendant's December 2022 denial of Plaintiff's request for leave is not actionable due to Plaintiff's failure to exhaust administrative remedies. Thus, this Court need not address this argument.

her assertion that similarly situated employees were treated more favorably or those who were responsible for approving her leave request knew of her disability. (Doc. No. 35, PageID# 1055.)

When a plaintiff presents indirect evidence in support of a Rehabilitation Act claim, "the *McDonnell Douglas* burden-shifting framework governs." *Bledsoe v. Tenn. Valley Auth. Bd. of Directors*, 42 F.4th 568, 578–79 (6th Cir. 2022) (citing *Pelcha v. MW Bancorp, Inc*., 988 F.3d 318, 328 (6th Cir. 2021). Under this framework, "the plaintiff faces the initial burden of presenting a prima facie case of unlawful discrimination." *Johnson v. Kroger Co.*, 319 F.3d 858, 866 (6th Cir. 2003). To establish a prima facie case of discrimination, a plaintiff must "show that 1) he is a member of a protected class; 2) he was qualified for his job and performed it satisfactorily; 3) despite his qualifications and performance, he suffered an adverse employment action; and 4) that he was replaced by a person outside the protected class or was treated less favorably than a similarly situated individual outside his protected class." *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572-73 (6th Cir. 2000). "The establishment of a prima facie case creates a rebuttable presumption of discrimination and requires the defendant to 'articulate some legitimate, nondiscriminatory reason' for taking the challenged action." *Kroger*, 319 F.3d at 866 (quoting *Univ. of Cincinnati*, 215 F.3d at 573). Finally, "[i]f the defendant is able to satisfy this burden, the plaintiff must then 'prove that the proffered reason was actually a pretext to hide unlawful discrimination.'" *Id.*

Plaintiff's claim for disability discrimination fails as a matter of law because Plaintiff does not identify a single similarly situated individual whom Defendant treated more favorably. In her deposition, when Plaintiff was asked if she was aware of anyone in her role who was treated more favorably than her, she said she did not know. (Bryant Dep., p. 71.) For this reason, Plaintiff's disability discrimination claim fails as matter of law.

Even assuming *arguendo* that Plaintiff had identified a comparator, none of Defendant's actions rise to the level of an adverse employment action. To plead an adverse employment action, a plaintiff must show "some harm respecting an identifiable term or condition of employment."[9] *Ahmed v. Hamtramck Pub. Schs.*, 178 F.4th 975, 984 (6th Cir. 2026) (citing *Muldrow*, 601 U.S. at 354-55).

In *Lee v. City of Columbus, Ohio*, 636 F.3d 245, 248 (6th Cir. 2011), the city had a policy requiring that "an employee who is returning to regular duty must under specified circumstances provide a note from his or her attending physician to his or her immediate supervisor." "The physician's note must state the nature of the illness and that the employee is capable of returning to regular duty if the employee was off for more than three days of sick leave or was previously notified by a commander to do so." *Id*. The Sixth Circuit held that:

> [T]he City's Directive comports with the Rehabilitation Act and does not violate the proscriptions pertaining to disability-related inquiries set forth in § 12112(d)(4)(A) of the ADA, incorporated by reference into the Rehabilitation Act. Because the City's implementation of the Directive does not constitute an adverse employment action, plaintiffs have failed to establish a prima facie case of disability discrimination under the Rehabilitation Act. *See Jones* [*v. Potter,* 488 F.3d 397, 404 (6th Cir. 2007)].

*Id*. at 258–59 (6th Cir. 2011).

As in *Lee*, Kendrick's request that Plaintiff send her the dates she would be out for her surgery does not constitute an adverse employment action for disability discrimination under the Rehabilitation Act. *See id*. The VA's policy authorizes supervisors to request this information when a party applies for leave that is more than three days long, and Kendrick explained she needed information to determine staffing needs. Likewise, although Kendrick initially recommended that

---

[9] The standard for an adverse action in a discrimination claim differs from that in a retaliation action. *See Muldrow*, 601 U.S. at 348.

Bryant's renewed request for leave be denied in June 2023, Plaintiff's request for advanced leave was ultimately granted, so it cannot be argued that Kendrick's recommendation caused some harm to a condition or term of Plaintiff's employment. Nor can Plaintiff being assigned to the same shift as Arthur, with whom she does not even speak, cause some harm to a term and condition of her employment. Thus, for these reasons, this Court grants summary judgment in favor of Defendant as to Plaintiff's disability discrimination claim.

## V. Conclusion

For the reasons set forth herein, Defendant's Motion for Summary Judgment (Doc. No. 29) is **GRANTED,** and the action is **DISMISSED**.

**IT IS SO ORDERED.**

*s/Pamela A. Barker*
PAMELA A. BARKER
U.S. DISTRICT JUDGE

Date: September 15, 2026